# CASES DETERMINED

# August Term, 1924.

DRAPER, Administrator, Appellant, vs. RODD, Sheriff, Respondent.

*September 16—November 11, 1924.*

*Taxation: Unlawful sale of personal property: Failure to give notice of sale: Action for conversion: Consent of agent of owner to sale: Estoppel: Waiver: Acceptance of surplus by owner.*

1. An action by the owner of lumber against the sheriff to recover damages for the unlawful sale of the property for taxes is not an action to recover a tax, and secs. 74.73 and 74.74, Stats., are not applicable. p. 5.
2. Although the sheriff was authorized by the warrant of the county treasurer to seize and sell the property for the purpose of collecting personal property taxes, his failure to comply with the statute in making a sale rendered him liable to the owner for damages as for conversion. p. 6.
3. Where the sheriff levied on plaintiff's lumber and sold the same for taxes without complying with the statute, an agent's unauthorized consent to such sale did not estop the plaintiff from suing the sheriff for damages, since dominion over the property was taken away from the plaintiff and his agent by the levy thereon by the sheriff. p. 8.
4. Acceptance by the owner of the lumber of the surplus proceeds of an unlawful sale thereof by the sheriff for taxes does not estop him from suing the sheriff for damages as for conversion, since the receipt of such surplus by the owner was not an inducement to the sheriff to sell the lumber, nor did it constitute a waiver of the unlawful sale. p. 8.
5. Nor is such acceptance a waiver or an accord and satisfaction, since the surplus was not turned over by the sheriff nor received by the owner with the understanding that it was in satisfaction of the sheriff's liability as a trespasser. p. 9.

JONES, J., VINJE, C. J., and ESCHWEILER, J., dissent.

APPEAL from a judgment of the circuit court for Oneida county: CHESTER A. FOWLER, Judge. *Reversed.*

The facts in this case, as stated in the opinion of the trial judge, are as follows: The plaintiff is the administrator of the estate of Roy Kayhart, who died subsequent to May 1, 1921. On said May 1st Kayhart was the owner of a mill-run of lumber situated in the town of Schoepke, Oneida .county. When the town treasurer received the tax roll and when she delivered it over to the county treasurer, no tax and no assessment were entered on the tax roll against the name of Kayhart. His name appeared thereon, in the proper place among the names of persons against whom personal property was assessed and taxed, and no entries were extended in connection therewith.

While the tax roll was in the hands of the town treasurer the plaintiff administrator sent one Mitchell, who was in charge of the lumber at all times until it was levied on by the sheriff as hereinafter stated, to the town treasurer to ascertain the amount of tax assessed against Kayhart. Mitchell learned the condition of the tax roll, and reported the facts in that regard to the plaintiff and the widow of Kayhart. After the tax roll got into the hands of the county treasurer entries were made by some one, unknown to the plaintiff, of $4,000 as the assessed value of the lumber and $292 as a tax levied thereon against Kayhart. This not being paid to the county treasurer before he placed the de-linquent tax warrant in the hands of the sheriff, the amount was included in the warrant as a delinquent tax against Kayhart, and so appeared thereon when the warrant was delivered to the sheriff. The sheriff's warrant was fair on its face.

On receipt of the warrant the sheriff wrote to the widow Kayhart respecting payment of the tax. The sheriff claims, and the jury must have so considered in view of their find-ings, that she wrote him promising to pay the tax, where-fore he delayed executing the warrant. But payment not

being made on October 5, 1922, he levied under his warrant on the whole lot of lumber, consisting of eighteen piles or thereabouts, which was worth at least $4,000.

The sheriff delayed noticing sale pursuant to his levy for the benefit of the plaintiff, doing so on the request of said Mitchell, who stated to him in substance, as the jury must have believed, that the plaintiff was in Canada and would attend to payment on his return. But the tax not being paid, the sheriff noticed the whole lot of lumber for sale on November 30th, giving the proper statutory notice. But considering that the day was a legal holiday, Thanksgiving, and that sale could not be made thereon, the sheriff did not attend at the time and place of sale, nor did the public.

The day following, December 1st, the sheriff went to the place where the lumber was, and where the sale thereof had been noticed, with intention of "adjourning the sale" as he expresses it. But the said Mitchell was there and suggested that the sheriff go on with the sale. Several persons were present. The sheriff, believing that Mitchell was acting for and representing the plaintiff, thereupon proceeded to sell the property. He first solicited bids for separate piles of lumber, but receiving none, he then solicited bids on the whole lot. Some few bids were made for the whole, and the whole was finally struck off for $430 to one O'Neill, who bid for and pursuant to agreement with said Mitchell, and Mitchell furnished the funds for payment of the amount. The sheriff understood that the lumber was bid in for the plaintiff.

Prior to the levy on the property by the sheriff, Mitchell had contracted for the plaintiff to sell the lumber at agreed prices for the different kinds and grades. Subsequent to his purchase he effected a sale to the same party, which was only completion of this contract, the only change being that he received $105 per thousand first quality birch instead of $100 as first agreed, and received for the lumber $5,600.

The plaintiff was told by Mitchell of the sheriff's levy

and advertisement for sale, and on receiving such information determined to let the sheriff sell the property. He did not inform the sheriff that he claimed the tax was illegal or of the facts whereon his claim of illegality was based, nor did he in any way forbid the sale. He was not present at the sale, but knew that Mitchell bid in the property. He received and retained the surplus proceeds of the sale after deduction of the tax and fees of the sheriff. He laid no claim to the property against Mitchell, and permitted him to sell it pursuant to the original contract of sale made by Mitchell.

Mitchell was in charge of the lumber when the sheriff levied thereon and had authority to act for the plaintiff in selling it and had so acted in contracting for its sale prior to the levy as aforesaid. The plaintiff and Kayhart's widow both resided in Clark county. No one but Mitchell, who lived at the mill, was or had ever been in immediate possession or charge of the lumber. The plaintiff never had any communication with the sheriff and did not expressly authorize Mitchell to act for him in any way after the levy by the sheriff.

The jury found by special verdict that the sheriff did not have notice at time of levy or time of sale that the tax was not regularly entered on the tax roll, and that by the exercise of ordinary prudence and diligence he would not have discovered such fact prior to either such time; that the fair market value of the lumber at the time of the levy was $4,000; that the sheriff did not sell a larger amount than a person of ordinary care and prudence would have sold under like circumstances; that the sheriff did not commit any wilful wrong in selling the property; and that the sheriff used due care and diligence in protecting the lumber.

From a judgment entered in favor of the defendant the plaintiff appeals.

The cause was submitted for the appellant on the brief of *F. D. Calway*, attorney, and *James O'Neill*, counsel, both

of Neillsville, and for the respondent on that of *A. J. O'Melia* of Rhinelander.

OWEN, J. The trial judge denied motions to change the answers of the jury to the questions of the special verdict. He concluded that the warrant of the county treasurer was regular upon its face and protected the sheriff in making the levy irrespective of the validity of the pretended tax, but "that the sheriff, by failing to attend on November 30th at the time and place set for sale and then either go on with the sale or proclaim an adjournment, lost his right to sell the property except under readvertisement; and that the sale on December 1st without any readvertisement rendered him a 'trespasser *ab initio.*' " He denied judgment in favor of the plaintiff, however, because he was of the opinion that the provisions of secs. 74.73 and 74.74, Stats., were applicable to the situation. In brief, those sections provide that in actions to recover an unlawful tax the plaintiff can recover only such sums as he paid over and above the taxes which were justly chargeable against the property taxed, and if the court is unable to determine such sum with reasonable certainty, the action shall be continued for a sufficient time to permit a reassessment of the property affected by such void assessment. In other words, the court held that while the sheriff acted as a mere trespasser in selling the lumber, nevertheless this action, brought for the purpose of recovering damages for the conversion, is to be treated as an action to recover a tax. This was clearly error. This was not an action to recover a tax, and the statutes referred to have no application whatever.

Granting that the sheriff had a right to seize and sell the lumber under the warrant of the county treasurer, it was necessary for him to proceed in accordance with the requirements of law. The law required that he give notice of the time and place of sale. If he failed to give such notice, the warrant of the county treasurer afforded him

no protection.   If he assumed to sell the lumber without giving the proper notice, he became a trespasser and the liabilities of a trespasser attached.   It is in this capacity that he is called upon to respond in this case.   While it may be assumed that he had a warrant justifying him in seizing and selling the property for the purpose of collecting the tax, it was necessary for him to proceed in the manner provided by law in order that he be protected by the terms of the warrant.   When he assumed to sell the lumber without giving the notice required by statute he was not acting under the warrant and forfeited the protection which the warrant accorded him.

The case of *Keystone L. Co. v. Pederson,* 93 Wis. 466, 67 N. W. 696, which the trial court thought governed this case, has no application.   In that case the town treasurer made a levy on certain property for the purpose of collecting a tax due the town by the owner of the property.   Before the day of sale the defendant made his return to the county treasurer, but not of the taxes in question, upon the ground that he had a valid lien on property belonging to plaintiff sufficient to satisfy such taxes.   Thereafter and before sale was made the plaintiff commenced an action of replevin to recover the property, upon the theory that the right of the defendant to hold the property ceased on the return day of the warrant.   It was held that the town treasurer possessed the same powers under a tax warrant that are possessed by sheriffs under an execution, and that as sheriffs after having lawfully seized property under an execution may sell it after the return day of the execution, so may the town treasurer sell property lawfully seized under his warrant after the return day of such warrant.   It will be noticed, therefore, that the town treasurer at no time became a trespasser.   He was acting within the law at all times.   Under such circumstances, it was said in that case that the remedy provided by the then sec. 1164 was the only remedy available to the taxpayer in that case.   The two

Draper v. Rodd, 185 Wis. 1.

cases are entirely different. In the *Pederson Case* the action was against a lawful effort on the part of the town treasurer to collect the tax. Here the sheriff unlawfully sold the lumber and is asked to respond to his liability as a trespasser. It seems plain that neither sec. 74.73 nor 74.74 has any application, or affords any barrier, to the maintenance of this action.

It was urged before the trial court and is urged here that the plaintiff is estopped from maintaining this action because Mitchell, the person who had custody of the lumber and had acted for the plaintiff in negotiating sales thereof, told the sheriff on the day of the sale to go ahead and sell the lumber. It is claimed that the sheriff acted upon this suggestion of Mitchell, believing him to be the agent of the plaintiff with power to bind him in that respect. It is conceded that Mitchell had no express authority to bind the plaintiff upon that occasion. If the sheriff was justified at all in thus relying upon the suggestion of Mitchell, it was because Mitchell had apparent power in the premises. We may concede that Mitchell acted for the plaintiff with respect to the care, and even the sale, of the lumber prior to the levy by the sheriff. The levy by the sheriff seriously interfered with the status of the lumber. By that levy the possession of the property was taken from both Mitchell and the plaintiff. Neither of them thereafter could exercise any lawful dominion over the same. A new relationship was created between the plaintiff and the sheriff. The sheriff was demanding the payment of a tax from the plaintiff which the plaintiff contended could not be lawfully collected. Granting that Mitchell had power to bind plaintiff in all matters relating to the care and marketing of the lumber, there is not a scintilla of evidence in the case that he had any authority to act for the plaintiff in any manner relating to the controversy over the validity of the tax. This was an entirely different subject and one with reference to which Mitchell had no power to bind the plaintiff. The sheriff was dealing

with the lumber on the 1st day of December merely as a tax collector. He was lawfully in possession of the lumber, though he had no lawful authority to sell the same without readvertisement. His possession of the lumber had deprived not only the plaintiff but Mitchell of any dominion over the same, and the subject of the controversy between the plaintiff and the sheriff on that day was the tax and not the lumber. While the plaintiff perhaps could have consented to a sale of the lumber on that day to pay the tax, Mitchell was without any power to bind the plaintiff in that behalf. Neither had the plaintiff done anything which justified the sheriff in entertaining a belief that Mitchell possessed such authority. The trial court rightly held that no estoppel took place.

The plaintiff accepted from the sheriff, of the amount realized from a sale of the lumber, the balance remaining after the payment of the pretended tax, costs and expenses of sale, etc. It is claimed that his acceptance of this money estops him from maintaining this action. There are cases holding that judgment creditors accepting a balance remaining upon a judicial sale are estopped to challenge the sale so as to defeat the title of the purchaser where such acceptance occurs after they know facts rendering the sale void. It is said that such act amounts to a ratification of the sale. However, we know of no case where it is held that the acceptance of a balance under such circumstances estops the judgment creditor from maintaining an action against the sheriff, and the principles governing estoppel can lead to no such conclusion.

In order to raise an estoppel the action of the person estopped must be such as to induce another to take some action which he would not otherwise have taken. The receipt of the money by the plaintiff certainly was no inducement to the sheriff to sell the lumber, and we see no element of estoppel in that circumstance. Here the plaintiff is not attempting to set aside the sale or to recover the lumber, so

that the acceptance of the balance tendered by the sheriff was not at all inconsistent with the passing of title to the purchaser.  Neither does it amount to a waiver or an accord and satisfaction.  The balance was not turned over by the sheriff nor received by the plaintiff with any idea on the part of either that it was in satisfaction of the sheriff's liability as a trespasser.  The lower court correctly held that this circumstance did not constitute a defense to the action.

We see no escape from the conclusion that the sheriff is liable to the plaintiff for the value of the lumber sold as a conversion thereof, less the sum which the plaintiff has received.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment in accordance with this opinion.

JONES, J. (*dissenting*).   I greatly regret that a majority of the court feel obliged to reach a conclusion which works great hardship and injustice to the defendant.  Courts are sometimes compelled by statutes or established rules of law to make decisions which lead to such results.  But in my opinion this is not the case here.  On the contrary, I believe that justice can be done without violating any rule of law, which is always a "consummation devoutly to be wished."

Without entering on any detailed discussion of the evidence, it is clear that the sheriff acted in perfect good faith. He had delayed making a sale on the request of the parties interested with the expectation that the tax would be paid.  The plaintiff and the widow and the plaintiff's agent, Mitchell, who before the trial had married the widow, knew that the tax was utterly void.  Knowing this, the plaintiff and Mitchell agreed that the sale should proceed.  Knowing of the contemplated sale the plaintiff said to his agent, "We will let him [the sheriff] go on and sell."  The plaintiff absented himself from the sale, leaving Mitchell, his agent,

in full charge of the property.   When the sheriff expected
to adjourn the sale or post new notices, Mitchell told him to
proceed that morning, as the public were attending and the
matter had dragged along far enough.   Mitchell through a
third person bid in the lumber on the sale and gave the
sheriff to understand that it would be redeemed and that in
fact the bid was for the plaintiff, by his agent and employee.

Up to the time of the levy Mitchell was in full charge of
the lumber, and, among other things, had the authority to
sell it.   When the levy was made the legal possession was
changed, it is true, but subject to the levy the title remained
in the plaintiff.   To all appearances Mitchell was represent-
ing the plaintiff.   It is true that the plaintiff did not give
instructions as to the details of the sale and gave no ex-
press instructions to waive irregularities in the procedure,
but in view of his full knowledge of what had transpired
it seems to me only the reasonable inference that Mitchell
had implied authority to use his own judgment as to the
manner in which the sale should be made.   He had at
least apparent authority to act, and it seems to me a harsh
rule that under the facts proven the defendant was not
justified in believing that he had full power to represent
the plaintiff.   Of course it is elementary that an agent may
estop his principal.   It is not merely a question what au-
thority Mitchell actually had, but what third persons acting
in good faith had the right to believe he had, judging from
his acts and the acts of his principal.   *Emmons v. Dowe,*
2 Wis. 322; *O'Conner v. Hartford F. Ins. Co.* 31 Wis. 160.
I am convinced that in legal effect the plaintiff through his
agent consented to the act now complained of, and in con-
version consent is a good defense.   "It is a well settled
rule that if the owner expressly or impliedly assents to, or
ratifies, the taking, use, or disposition of his property," he
cannot recover for a conversion thereof."   38 Cyc. 2009.
See, also, Bowers on Conversion, § 10.

In my opinion there are additional reasons for holding
that the plaintiff was estopped from maintaining this ac-

tion.  With full knowledge of the facts he accepted the surplus from the proceeds of the sale and never offered to return them to the defendant.  If he had repudiated the transaction the sheriff might have protected himself from the loss which the judgment now directed inflicts upon him. It is true that the receipt and retention of the surplus by the plaintiff did not induce the sheriff to sell the lumber. But such conduct, under all the circumstances, was wholly inconsistent with the objection now made that the sale was illegal.  The notice required by law was for the benefit of the plaintiff.  By accepting and retaining the surplus knowing all the facts, he could waive, and in my opinion did waive, the defects complained of and ratified the acts of his agent and the sale.  There is abundant authority for the rule that a judgment debtor, by accepting the proceeds or surplus arising from a void or voidable sale, may waive the defects.  There is no such sanctity in the right to bring an action for conversion that it may not be waived by the conduct of the party complaining.  38 Cyc. 2042, and cases cited.  For these reasons I respectfully dissent.

I am authorized to state that Mr. Chief Justice VINJE and Mr. Justice ESCHWEILER concur in this opinion.