HOFFMAN, d/b/a Daalda Arabian Acres, Plaintiff-Appellant, v. RALSTON PURINA COMPANY, and others, Defendants-Respondents.

Supreme Court

*No. 76–220. Submitted on briefs November 1, 1978.—
Decided January 9, 1979.*
(Also reported in 273 N.W.2d 214.)

446

For the appellant the cause was submitted on the brief of *Michael I. Tarnoff* and *Warshafsky, Rotter & Tarnoff, S.C.,* of Milwaukee.

For the respondents the cause was submitted on the brief of *John S. Skilton, Michael P. Erhard* and *Foley & Lardner* of Milwaukee.

HEFFERNAN, J. The sole issue in this case is whether, where there is a dispute as to liability in tort between two parties and the alleged tortfeasor makes an offer of settlement accompanied by a check and credit memorandum, the retention of the check uncashed and the acquiescence in the fruits of the credit memorandum for a period of more than seven months constitutes an acceptance of that offer. We conclude that under these circumstances, where David Hoffman retained the check and credit memorandum for an unreasonable length of time with the knowledge that both instruments were offered in full settlement of the disputed claim, such re-

tention in itself constituted an acceptance of the settlement offer.

In addition, the offeree, Hoffman, in this case had a duty to speak to reject the offer, because the parties Hoffman and Ralston Purina, were engaged in settlement negotiations at the time the offer was made.

The facts revealed at trial show that Hoffman operated a ranch for the raising of Arabian horses. He purchased Purina horse feed through a dealer, Waldschmidt & Sons, Inc. In January of 1973, Waldschmidt delivered a load of Purina feed to Hoffman which allegedly resulted in the illness and death of a number of Hoffman's horses. It was determined that the feed was contaminated with highway-grade rock salt. In February of 1975, Hoffman commenced an action against the Ralston Purina Company, Waldschmidt & Sons, Inc., and Heritage Mutual Insurance Company.

The action for the injury to his horses was based upon theories of strict liability in tort, negligence, and breach of warranty. Ralston Purina answered, specifically denying the allegations in respect to the facts underlying each theory of recovery set forth in the plaintiff's complaint and, in addition, alleging the affirmative defense that, prior to the commencement of the lawsuit, the claim had been settled and that there had been a full satisfaction and discharge of the plaintiff's claim.

The case was tried to the court, and the action against Ralston Purina was dismissed on the basis of evidence which the trial court concluded was sufficient to show that the plaintiff and Ralston Purina Company had reached an accord and satisfaction upon the tendering and acceptance of the sum of $3,000.

The record shows that, when Hoffman's horses began to show signs of illness, he called Purina and Waldschmidt. Following a series of meetings, an employee of Purina, one Wuestenberg, visited the Hoffman ranch on March 26, 1973. He brought with him a release, which

recited that for the sum of $3,000 the Ralston Purina Company was to be released of all liability as the result of the damage to the horses. Although the settlement on its face purported only to release Ralston Purina, Hoffman by interlineation added the sentence, "This agreement in no ways releases the liability of Waldschmidt Feed and Supply Co." The release was signed by Hoffman and witnessed by Wuestenberg. Wuestenberg advised Hoffman at the time the release was signed that he did not know whether the release as amended would be acceptable to Purina. A day or two later, Wuestenberg informed Hoffman that the release as amended was not acceptable to Purina.

Shortly after Purina rejected the release as amended, it terminated its previous credit relationship with Hoffman and insisted upon cash for all future deliveries. The chief officer of Purina's Fond du Lac plant stated that this insistence upon cash was because Hoffman was two or three months past due on his account with Purina. Hoffman, however, was able to get feed from another source.

On May 2, 1973, Purina's director of claims and adjustments wrote to Hoffman and suggested that there be a further meeting between a Purina representative and Hoffman to resolve the situation. On May 9, 1973, a representative of Purina, Doyle L. Cook, wrote to Hoffman making an offer to settle for $3,000, with no reference to the amendment to the release which had been added by Hoffman. On May 11, 1973, Hoffman wrote to Purina stating his unwillingness to settle for the sum of $3,000 for the release of both Purina and the dealer, Waldschmidt. On May 15, the director of claims and adjustments for Purina again wrote to Hoffman, stating that, since Cook, the Fond du Lac representative of Purina, had in his possession the signed release of Hoffman (the release which excluded Waldschmidt from the release), a check would be sent to him shortly.

Although the trial court made the finding that Hoffman had in fact received this letter, Hoffman testified that he did not. On May 16, 1973, Cook, a Purina representative, wrote to Hoffman, stating:

"Since we had originally agreed to settle the claim with you for $3,000 and your signature was placed on the release, we would like to go ahead and settle this matter for once and for all.

"Attached is a credit memo in the amount of $2,624.36 that will clear your account in full with Ralston Purina and a check for $375.64. The total of these two come to $3,000."

Hoffman also testified that he had never received this letter nor the attached check for $375.64 and the credit memorandum in the amount of $2,624.36. The check was never cashed or returned. Hoffman acknowledged that a statement received from Purina dated May 15, 1973, showed that he had a balance due Purina in the amount of $2,650.60 and also acknowledged that a statement the next month dated June 17, 1973, showed his balance had been reduced to zero. He admitted that he never contacted anyone at Purina to determine why his indebtedness had been reduced.

At trial, Ralston Purina produced a document which it obtained from Hoffman in the course of pretrial depositions. That document was the May 15, 1973, Ralston Purina statement showing an indebtedness of $2,650.60. On that statement in handwriting, which Hoffman acknowledged to be his, was written, "Please forward difference for our consideration of your new offer as of 5/16/73."

While it is acknowledged that this statement with Hoffman's handwritten message was never sent to Ralston Purina, the fact that the notation was made upon the statement, referring to the offer of May 16, 1973, was taken as proof by the trial court that the plaintiff Hoffman knew the exact amount of the settlement check

offered to him and that he had in fact received the settlement offer and the attached credit memorandum and check which accompanied the May 16 settlement offer.

In January of 1974 Purina found that the May 1973 check in the sum of $375.64 had not been cashed. When this was brought to Hoffman's attention, he stated that he had never received the check and that there was no settlement of the claim. Purina then sent him another check, which was returned.

On the basis of these facts, the trial court concluded that Hoffman had received the settlement offer dated May 16, 1973, and the accompanying check and credit memorandum. It concluded, as a matter of law, that the plaintiff's retention of the check and the credit memorandum for a period of more than seven months and the plaintiff's silence for that period of time was an acceptance of the offer and that, therefore, Purina and Hoffman had reached an accord and satisfaction of the prior controversy. He ordered judgment to be entered dismissing the plaintiff's complaint against Ralston Purina.

We conclude that the trial court's findings are not contrary to the great weight and clear preponderance of the evidence. Our analysis of the facts shows that Hoffman's offer to settle according to the amended terms of the release was indeed rejected by Purina. Purina, however, on May 16, 1973, made a new offer, which incorporated the terms of the release as amended by Hoffman. That offer, which was accompanied by a check and credit memorandum totaling the sum of $3,000, was received by Hoffman. The facts, then, demonstrate that Purina offered to settle the question of its disputed liability by the payment of $3,000, partially by crediting Hoffman's overdue account and partially by the check. Hoffman remained silent after the receipt of this offer and the attached instruments. He never cashed the

check. He never returned either it or the credit memorandum. It was only in response to a query from Purina in January of 1974, more than seven months later, that he stated he was rejecting the offer.

The trial court properly concluded that these facts demonstrated that there was an "accord and satisfaction."

An "accord and satisfaction" is an agreement to discharge an existing disputed claim, whether the claim be one arising in contract, tort, or otherwise. An "accord and satisfaction" constitutes a defense to an action to enforce the claim. 6 Corbin, *Contracts,* sec. 1276, p. 114.

Ordinary contract principles apply in determining whether an agreement of "accord and satisfaction" is reached. Corbin, *supra,* at 115. Mere performance does not operate as a satisfaction unless offered as such to the creditor or claimant. There must be expressions sufficient to make the creditor understand or to make it unreasonable for him not to understand that the performance is offered in full satisfaction of the claim. Corbin, *supra,* sec. 1277, p. 118.

The decisions of this court are in agreement with Corbin's analysis. In *Draper v. Rodd,* 185 Wis. 1, 200 N.W. 761 (1924), it was held that there could be no accord and satisfaction where the payment made could not be known to be in full satisfaction of the pre-existing liability. In the instant case, however, the record is clear that the payment of $3,000 was offered in full settlement of the pre-existing claim. The letter accompanying the check and the credit memorandum stated, "[W]e would like to go ahead and settle this matter for once and for all."

In order for a contract of accord and satisfaction to have been created, however, this offer of Purina must have been assented to by Hoffman. 6 Williston, *Contracts* (rev. ed.), sec. 1854, p. 5213. Assent does not necessarily, however, require mental assent or a "meeting of the minds." 6 Corbin, *supra,* sec. 1279, p. 130; 6 Williston, *supra,* sec. 1854, p. 5213. The question is not the actual intent of the offeree, but his manifested intent. Laufer, *Acceptance by Silence: A Critique,* 7 Duke Bar Assn. J., 87, 91 (1939). An assent or acceptance of a contract offer can be manifested by deed as well as by word.

Actions of the offeree can constitute acceptance even when accompanying words express a contrary intent. Corbin, *supra,* sec. 1279, p. 129. When a creditor receives a check offered in full settlement of an obligation and cashes the check, but simultaneously writes to the debtor that he refuses to accept the check as in full satisfaction but will apply it only in reduction of the debt, the action of cashing the check will be considered an acceptance of the offer. Williston, *supra,* sec. 1854, pp. 5213–214. That same rule was followed in *Thomas v. Columbia Phonograph Co.,* 144 Wis. 470, 476, 129 N.W. 522 (1911). We said, "[a] plaintiff could not accept the offer and avail himself of the funds without assenting to the condition upon which the offer was made." In the instant case, of course, Hoffman did not cash the check. Rather, he remained silent and retained the credit memorandum and the uncashed check.

Williston, *supra,* sec. 1854, pp. 5215–216, takes the position that there is no distinction between the cashing of a check or the retaining of a check for an unreasonable length of time. He states:

"It is said that the acceptance of the check necessarily involves an acceptance of the condition upon which it was tendered. A retention of a check, even for an unreasonable length of time has not always been given this effect, but as the creditor has no more right to retain the check an unreasonable time than he has to cash it, unless he accepts it as full satisfaction, there seems no propriety in distinguishing the two situations." [Footnotes omitted.]

Corbin, *supra,* sec. 1279, p. 133, takes the same position:

"The retention of the check for an unreasonable time, even though not cashed, will have the same effect if no objection was made to the form of payment and if the check would have been honored on presentation at the bank."

Hoffman on this appeal relies upon *Frank v. Frost,* 170 Wis. 353, 174 N.W. 911 (1919), for a contrary position. The facts of *Frank* are, however, far different than in the instant case. In that case, where there was a disputed claim for seed corn, the defendant enclosed a check which bore upon its face the statement that it was "[f]or difference on seed corn and bags." (at 354) Within three days the plaintiff wrote to the defendant acknowledging the receipt of the check and demanding payment of the claimed balance. At a later date, the plaintiff offered to return the check, but that offer was refused. Thereafter, the plaintiff commenced an action. It was held by this court that there was no "accord and satisfaction." (at 355) Factually, however, the *Frank* case differs from the instant one because, in *Frank,* there was a prompt repudiation of the proposed settlement and a refusal by the offeror to take back the check. *Frank* was not a case of silence, and it is difficult to say that, under the circumstances, the check was retained, in a legal sense, when the effort to return it was rebuffed.

We believe it improper to interpret *Frank v. Frost* as authority for the proposition that one can retain a check

offered in full satisfaction of a claim and later be held to assert that he had not acquiesced in the proposed settlement. Such interpretation of *Frank v. Frost* is clearly erroneous. We believe that the interpretation of *Frank v. Frost* given in *Hanz Trucking, Inc. v. Harris Brothers Co.*, 29 Wis.2d 254, 138 N.W.2d 238 (1965), is the correct one. That case interpreted *Frank* as determining that, where a proffered check was held for an unreasonable length of time before rejection, a contract ensued. In *Hanz,* the check was held for approximately six weeks and it was determined that that period was not unreasonable and did not constitute an "accord and satisfaction."

Whether a check is held for an unreasonable length of time obviously depends upon the facts and circumstances of the dispute and the status of negotiations between the adversary parties. What is a reasonable time under the circumstances is primarily a question of fact, and what is an appropriate and acceptable period of retention under one set of circumstances has no precedential effect in terms of what is reasonable under different circumstances. It cannot be disputed that in the instant case the retention of the check, the acquiescence in the receipt of the credit memorandum which had the effect of reducing Hoffman's balance to zero, and the maintenance of complete silence for over seven months was unreasonable.

Moreover, Restatement 2d, *Contracts,* sec. 72(2), p. 142 (Tentative Draft 1972), provides that:

"(2) An offeree who does any act inconsistent with the offeror's ownership of offered property is bound in accordance with the offered terms unless they are manifestly unreasonable. . . ."

Under the Williston and Corbin rationale, the acceptance or retention of a check without accepting the terms

upon which it is offered is an act inconsistent with the offeror's ownership. In this case Hoffman retained not only the check but also retained the credit memorandum and accepted without objection the fruits of that credit memorandum—the cancellation of his existing indebtedness. We are satisfied that such silence and acquiescence was a manifestation of assent, under the rationale of Restatement 2d, *Contracts,* sec. 72(2).

The Restatement 2d, *Contracts,* furnishes still another rationale for our determination that Hoffman accepted Ralston Purina's contract of "accord and satisfaction." Sec. 72(1) provides:

"(1) When an offeree fails to reply to an offer, his silence and inaction operate as an acceptance in the following cases and in no others:

". . .

"(c) Where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept."

Under this rationale, where Hoffman and Purina had been in a continuous process of negotiations, the silence of Hoffman in respect to the offer, even if no check and credit memorandum had accompanied the offer, could be construed as an acceptance of the offer.

The record shows that the parties had exchanged a number of letters concerning the settlement of the dispute over the contaminated horse feed. They had a prior existing credit relationship. When Purina made its offer of settlement on May 16, 1973, it had every reason to expect an answer if its offer was rejected. It was unreasonable for the offeree, Hoffman, to remain silent if he did not intend to accept the proposed settlement. Laufer, *supra,* explains the rationale relied upon by the Restatement:

"There is the desirable 'privilege' to turn down offers summarily by silence, the 'right' of inaction. There is, on the other hand, the steadily growing recognition that established business practices, standards of fair play often call for action upon offers. Letters of strangers may be ignored, and their writers reckon with this possibility but the same is not true of business friends, of parties with whom there are or have been contractual relationships . . . ." Laufer, *Acceptance by Silence: A Critique,* 7 Duke Bar Assn. J. 87, 92 (1939).

It is apparent, therefore, that secs. 72(1)(c) and 72 (2) compel the conclusion that Hoffman accepted Ralston Purina's offer. This court in *Hanz Trucking Company, supra,* took a consistent position when it quoted with approval, on page 263, from 1 Am. Jur.2d sec. 23, p. 321, the following:

" 'Where a creditor receives a check from his debtor containing the words "payment in full," "final settlement," or other words of similar import, it is his duty to repudiate the offer and return the check or money remitted within a reasonable time after it is received if he does not care to receive it in full discharge of the indebtedness.' 1 Am. Jur. (2d), Accord and Satisfaction, p. 321, sec. 23."

We accordingly conclude that, under the facts found by the court, Hoffman, who knew of Ralston Purina's offer of settlement, retained the check and credit memorandum, and maintained silence in respect to the offer, accepted the contract of accord and satisfaction.[1] His tort claim against Ralston Purina was thereby settled, and his subsequent cause of action against Ralston Purina was properly dismissed.

*By the Court.*—Judgment affirmed.

[1] Since the second check for $375.64 was returned by Hoffman, Ralston Purina apparently owes him that amount to execute completely the contract of accord and satisfaction.