**ADVANCE CONCRETE FORMS, INC.,**
Plaintiff–Appellee,

v.

**McCANN CONSTRUCTION
SPECIALTIES COMPANY,**
Defendant–Appellant.

No. 89–2789.

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 1990.

Decided Oct. 23, 1990.

Michael H. Auen, Mark Langenfeld, Foley & Lardner, Madison, Wis., for plaintiff-appellee.

Patience D. Roggensack, Karen P. Flynn, Ross & Stevens, Madison, Wis., for defendant-appellant.

Before WOOD, Jr., POSNER, and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

McCann Construction Specialties Company appeals from that part of the judgment of the district court awarding $25,509.81 interest to Advance Concrete Forms, Inc. on past due invoices for products McCann purchased from Advance. We affirm.

## I.

McCann Construction Specialties Co. ("McCann"), an Illinois corporation, has been acting as a distributor for the products of Advance Concrete Forms, Inc. ("Advance"), a Wisconsin corporation, since 1967. McCann was Advance's largest distributor in the Chicago metropolitan area, purchasing approximately $700,000 worth of concrete forming systems from Advance in 1986 and 1987. McCann's purchases were usually initiated with a phone call to Advance in Madison, Wisconsin, or through orders that were taken in person by employees of Advance while visiting McCann in Illinois. The delivery was performed by common carriers with payments mailed directly to Advance in Madison or to a bank lock box in some other location designated by Advance.

Advance's usual billing procedure was to send an invoice to McCann within seven days of McCann's purchases. The record contained more than 200 invoices from December 6, 1985 through July 28, 1988, all of which contained a printed notation stating that the terms of the sale required payment within 30 days, and the vast majority contained a notation regarding finance charges as well, stating "1½% interest per month finance charge on accounts over 30 days. Annual percentage rate of 18%."[1]

Prior to January 1, 1986, McCann was not billed for interest, despite the fact that invoices from Advance contained statements as to finance charges.[2] In December 1985 Advance sent a letter to McCann (which McCann acknowledges receiving) stating that all invoices, after January 1, 1986, not paid in thirty days would accrue interest at 18 percent per annum. After January 1, 1986, Advance began billing McCann on a monthly basis for interest on unpaid balances.

Because the company had just changed its policy and begun collecting interest on past due accounts, Advance credited McCann for the interest charges on all invoices issued prior to April 1, 1986, in consideration for full payment of the outstanding balances by May 20, 1986. Greg LaFond of Advance, in a May 14, 1986 letter to Richard McCann, President of McCann, referred to the waiver of the finance charges through April, and specifically reminded McCann of the new policy of 1½ percent interest per month on accounts over 30 days, with the statement "please be aware that late charges will be assessed in the future based on our policy as described in the December 1985 letter to your firm."

In late spring or early summer of 1987, LaFond traveled to Illinois to meet with representatives of McCann regarding the payment of past due accounts and other matters, including McCann's recent request for forgiveness of the finance charges which had accrued up to that date. The testimony regarding what transpired at this meeting is in conflict; Robert Howting, Director of McCann's Accounts Payable Department, testified that Richard McCann stated he would not pay any finance charges in the future, while on the other hand Advance's representative, LaFond, testified that when he discussed future finance charges, Richard McCann made no response. The trial court did not find it necessary to decide who was more credible in recounting the events of the meeting, "because the document [produced as a result of that meeting] is clear." The document was a credit memo written on one of Advance's invoices, dated July 27,

---

1. The parties stipulated and the trial judge noted that the five invoices from Advance dated 7–21–88 and 7–28–88 stated "1 percent per month finance charge on accounts over 60 days. Annual percentage rate of 12 percent." The trial judge found that the course of dealing prior to these final invoices had established the 18 percent annual rate, and awarded the interest due at that rate. McCann raises no specific objection to the 18 percent rate as opposed to 12 percent.

2. Advance's invoices had always contained some term as to finance charges on past due accounts, which had never been enforced against McCann. The invoices in the record which were dated December 6, 1985 or later, with 5 exceptions, see n. 1, supra, contained the 18%/30 days' term.

1987, which credited McCann for finance charges accrued through April 1987, $11,-435.34. The memo also noted: "No further credit on finance charges."

After Advance issued this credit memo, McCann continued to order large quantities of goods, on credit, from Advance. Even though McCann claims that it did not approve of Advance's new policy regarding finance charges, it admits that it was aware of the policy and that Advance was imposing those charges on McCann's account. Beginning with the shipment reflected on the invoice dated May 17, 1988, McCann received ten separate shipments of goods over a period of three months from Advance on which it made no payment. Advance informed McCann on September 19, 1988, that it refused to ship any more goods until McCann's balance, as reflected in the August 31, 1988, statement, was paid in full.

Advance filed this diversity action in the district court in December of 1988, requesting payment of over $44,000 in principal balance, along with $23,715.16 in financing charges accrued between May 1, 1987 and November 30, 1988.[3] At trial McCann joined in the stipulation that his firm had never paid interest on any of their overdue accounts. Furthermore, McCann argues that it should not have to pay these interest charges because it never agreed in writing to pay them.

During the course of the proceedings, McCann admitted to owing principal on a number of unpaid invoices, but disputed the amounts on many of the invoices, as well as disputing the amounts previously paid on some invoices. McCann maintained that an agreement had never been reached

regarding imposition of finance charges by Advance. The court reviewed the invoices submitted and found numerous billing errors, including instances where McCann had been over-billed, and in other cases Advance had under-billed. After making the proper adjustments, the court found that the principal amount due from the invoices was $32,520.05, and that the interest term had become a part of the on-going agreement; after adjusting the billing errors, the court awarded Advance $25,509.81 in interest.

## II.

McCann appeals the court's finding that the finance charge assessed against late payments was a part of the agreement between Advance and McCann, and requires determination of whether a contract existed under Wisconsin law[4] requiring McCann to pay 18 percent annual interest on the amounts allegedly owed Advance for invoices that exceeded the thirty-day time limit for payment. McCann contends that Advance was not entitled to interest at the annual rate of 18 percent because there was not a meeting of the minds regarding the interest in their negotiations. McCann also contends that the imposition of any interest rate above 5 percent would have been improper and argues that Wisconsin Statute § 138.04 requires any interest term above 5 percent to be expressed in writing. The trial court concluded that the invoices Advance sent to McCann, subsequent to the shipment of goods, constituted a confirmation of the contract terms under Wisconsin Statute § 402.207(1)[5] and that the provision on the invoice regarding the charge of 1½ percent interest per month (18 percent per year) on overdue payments was a

---

3. Advance's pleading also asked for the payment of a $3,955.85 restocking charge for an order which McCann refused to accept during mid-September 1988, as well as interest on that balance through November 30, 1988. The district court awarded nothing to Advance on this claim. Neither party has raised this issue on appeal.

4. Because neither party questions that Wisconsin law applies in this case, we apply Wisconsin law without reviewing the choice of law issue. See *Corrugated Paper Products, Inc. v. Longview*

*Fibre Co.*, 868 F.2d 908, 910 n. 2 (7th Cir.1989) and cases cited therein.

5. Wis.Stat. § 402.207 provides, in pertinent part:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."

proposed additional term of the contract. A proposal for adding a term to the contract, between merchants (from the seller in this case), becomes part of the contract unless the proposal meets one of the specific criteria in § 402.207(2) (which are discussed below). The district judge found that because the 18 percent interest provision avoided the exceptions in § 402.207(2), it became part of the contract. The court did not address the issue of Wisconsin Statute § 138.04.

Wisconsin Statute § 402.207 reflects Wisconsin's enactment of § 2–207 of the Uniform Commercial Code. *See* Wisconsin Legislative Council—1961 Report, *reprinted in* Wis.Stat.Ann. § 402.207. Section 2–207 "applies to the situations in which an agreement has been previously reached either orally or by informal writings, and one or both parties send written confirmation of terms discussed, adding certain terms not discussed." *Mid–South Packers, Inc. v. Shoney's, Inc.*, 761 F.2d 1117, 1123 (5th Cir.1985) (applying Mississippi's version of U.C.C. § 2–207); *see* U.C.C. § 2–207, Official Comment 1. The trial court found that Advance's terms of sale were well known to McCann as a result of the prior dealings between these parties. *See* Wis.Stat. § 402.208. The court further found that contracts were formed when McCann called to order a specific quantity of one or more items, and Advance assented to the shipment of those items. The invoice generated after shipment acted as confirmation of the terms of the contract.

McCann acknowledges that in its opinion contracts were formed for the sale of goods at the time it placed each order. Additionally, McCann admitted at trial that it owed some $44,000 to Advance for products which it had received but not yet paid. McCann's only argument is with the imposition of 18 percent interest on past due invoices after April 30, 1987.

The text of Wisconsin Statute § 402.207(2) sets forth the criteria for determining whether additional terms which are included in a written confirmation under § 402.207(1) become part of the contract.

"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received."

Wis.Stat. § 402.207(2). If none of these exceptions apply, the interest term referred to in the confirming invoices sent by Advance became a part of the contract between the parties.

McCann challenges the additional terms on the grounds of parts (b) and (c) of § 402.207(2). It claims that the addition of the interest term was a material alteration of the contract, and that it gave notification of its objection to the interest term within a reasonable time after the invoices had been received.

■ As to whether the credit terms materially altered the contract between the parties, it should be noted that the official comments to the U.C.C. do not consider additions fixing credit terms to be material alterations.

"Examples of clauses which involve no element of unreasonable surprise and which therefore are to be incorporated in the contract unless notice of objection is seasonably given are: ... *a clause providing for interest on overdue invoices or fixing the seller's standard credit terms where they are within the range of trade practice and do not limit any credit bargained for.*"

U.C.C. § 2–207, Official Comment 5. In adopting the U.C.C. in Wisconsin, the Wisconsin Legislative Council's 1961 Report to the Legislature specifically referred to the Official U.C.C. Comments in explaining the purpose of the provisions of § 2–207. Wisconsin Legislative Council—1961 Report, *supra.* Based upon the U.C.C. Comment regarding credit terms, we hold that even though the actual dollar amount of the interest was significant, the 18 percent in-

terest provision failed to constitute a material alteration of the contract.

■ Thus we must determine whether McCann objected to the interest term. The district court found in favor of Advance because although Richard McCann testified that he protested, in effect, on numerous occasions, there was no formal, generalized protest until September of 1988 when Advance warned McCann that it was considering legal action. The district court likened McCann's actions "to the person who purchases a product which the person believes too expensive [and] says, as he buys it and hands his money across the table, 'I'm not paying that; I protest.'" The district court found that during the period from May of 1987 through September of 1988, finance charges were reflected on Advance's statements each and every month, McCann had previously been advised of this orally as well as in writing, McCann was aware of these finance charges, and further that McCann failed to formally protest the inclusion of these finance charges. Although McCann was aware that Advance would be imposing interest charges upon past due invoices, McCann continued to make purchases on credit. Thus, even had McCann objected, its continued acceptance of Advance's credit policy, knowing the terms, effectively acted as a waiver of that objection. *Hoffman v. Ralston Purina Co.*, 86 Wis.2d 445, 273 N.W.2d 214, 217–18 (1979); *Rangen, Inc. v. Valley Trout Farms, Inc.*, 658 P.2d 955, 964 (Idaho 1983).

We agree with the district court that the 18 percent interest charge was a part of the agreement between McCann and Advance for sales of products on credit. McCann was informed of Advance's intent to enforce the interest charge beginning with the letter of December 1985 to Richard McCann, the issuance of the credit on the April 1986 finance charges, and the credit memo of July 1987. McCann and the officers of his company admitted at trial that they were aware of Advance's intent to impose the 18 percent interest charge on their account, but that they continued to order products on credit from Advance and continued their prior practice of waiting more than thirty days before making payment on the invoices.

■ Wisconsin Statute § 138.04 requires that when an interest rate higher than 5 percent is imposed upon a party, that rate shall be "clearly expressed in writing," but the statute does not mandate that rate to be "subscribed by the party charged therewith," as in Wisconsin's General Statute of Frauds, Wis.Stat. § 241.02. We are unaware of any Wisconsin case law expressly holding that a writing under § 138.04 need not be signed by the party to be charged in order to be enforceable, but the language of section 138.04, Wisconsin Statutes, fails to require a signed writing as does Wisconsin's General Statute of Frauds. We hold that the written expression of the 18 percent interest rate in the December 1985 letter as well as the credit memos reflecting Advance's forgiveness of accumulated interest up to July 1987, along with the written expression of the 18 percent interest rate on Advance's invoices certainly are a sufficient written expression of the 18 percent interest rate under § 138.04.

### III.

McCann also argues that the district court erred in refusing to receive in evidence a letter to Advance from Richard McCann (referred to as "Proposed Exhibit 222"), dated May 12, 1987, which requested, in part, that Advance credit McCann for late charges on its April 1986 statement from Advance. The proposed Exhibit 222 failed to impeach the testimony of Greg LaFond (the purpose for which it was submitted) because it was not a general objection to interest charges, but rather, a specific request for credit on accrued interest. It was not an abuse of discretion for the trial judge to exclude a document which was claimed to be impeaching but which failed to contradict the testimony of the witness. *See United States v. De Gudino*, 722 F.2d 1351, 1355 (7th Cir.1983).

### IV.

McCann's appeal must fail as we are convinced that McCann certainly had full

knowledge of the fact that the 18 percent interest policy on past due bills was being enforced from July 27, 1987 onward, yet it continued to leave its account open for more than thirty days. The purchase of goods from Advance on credit after being well advised of the 18 percent credit terms which Advance would place on the account leads us to one conclusion: McCann assented to the credit terms proposed by Advance. Furthermore, the terms were sufficiently expressed in writing so that they were not in violation of Wis.Stat. § 138.04. The judgment of the district court is

AFFIRMED.