Jeffrey OPICHKA and Jennifer Opichka,
Plaintiffs-Appellants,

William F. BREITENSTEIN,
Intervening Plaintiff-Appellant,

v.

RACINE COUNTY,
Defendant-Respondent.

Court of Appeals

*No. 2005AP1807. Submitted on briefs February 17, 2006.
—Decided April 5, 2006.*

2006 WI App 96

(Also reported in 715 N.W.2d 677.)

On behalf of the plaintiffs-appellants and intervening plaintiff-appellant, the cause was submitted on the briefs of *Rebecca D. Boyle* of *Fuchs, DeStefanis & Boyle, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John P. Serketich*, assistant corporation counsel of Racine.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. Three Racine County sheriff's deputies requested time off of work as a result of motor vehicle accidents in which they had been involved. The County gave them their paid time off but then asserted a subrogation lien against settlement amounts they recovered from their tortfeasors, reasoning that it had a right to be reimbursed for the benefits it paid. We disagree. The County had no right to reimbursement because it had not "paid" anything. The deputies had earned their time off. The benefits they received were therefore their own property, not extra amounts out of the County's pocket. Accordingly, we reverse the circuit court's judgment in favor of the County and order the County to return the settlement amounts it received from the deputies. We further reject the County's position that it reached a valid accord and satisfaction with two of the plaintiffs, so as to preclude their claims.

## BACKGROUND

¶ 2. Neither party disputes the underlying facts in this case. They are as follows. All three plaintiffs are sheriff's deputies employed by the County who had to take time off of work as a result of automobile accidents. In order to receive pay, each of the deputies used some combination of sick leave, donated sick leave, vacation days, and compensatory time. All three subsequently brought suit against their tortfeasors. Jeffrey and Jennifer Opichka reached a settlement with their tortfeasor, and William F. Breitenstein's action also settled.

¶ 3. In both cases, the County demanded part of the proceeds, asserting a subrogation lien based on its payout of the time-off benefits. The Opichkas' attorney paid a total of approximately $332.50 to the County from the settlement proceeds to satisfy the liens asserted against them. Breitenstein placed $25,452.91 of his recovery in escrow to cover the subrogation claim against him. In addition to asserting a lien on the deputies' recovery, the County refused to restore their time-off benefits. The deputies served the County with notices of claim, which the County denied. The Opichkas brought suit against the County, and Breitenstein intervened as an additional plaintiff. Both the deputies and the County moved for summary judgment. The Opichkas also requested that the court order the County to return amounts paid to it.

¶ 4. The deputies maintained that they had two separate rights to recover. First, their collective bargaining agreement gave them a contractual right to take time off in the form of vacation, sick leave, and compensatory time. Second, they had a right to recover from their tortfeasors for the loss of that time. In other words, the accidents caused the deputies to use up time—time to which they were contractually entitled—that they otherwise could have used for other purposes, such as vacation or sick days. They contended that they would not be made whole unless the tortfeasor had to pay for this loss. The County, on the other hand, received an improper double benefit according to the deputies: it not only recovered amounts that it was obligated to pay, it did so while also relieving itself of the obligation to pay future sick time. This zeroing out of their benefits, the deputies argued, violated the terms

492

of their collective bargaining agreement.[1] They maintained that the County could not exercise subrogation rights it had not bargained for during the contract negotiations.

¶ 5. The County rejoined that it was the deputies, not the County, who received a double recovery. It saw the situation as follows: The collective bargaining agreement entitled the deputies to use their vacation, sick leave, and compensatory time off. They requested this time off, and the County gave it to them. In doing so, the County incurred costs, because when one employee takes time off, the County has to pay not only that individual but also a replacement, usually at a rate of time and one-half. As the County viewed the matter, these deputies wanted to either (1) keep the recovery and retain the same money they already received as paid time off or (2) reimburse the County for the recovery only on the condition that they get their sick time back so they could take the same time off all over again. Such a double recovery would unjustly enrich the plaintiffs.

¶ 6. In addition, the County argued that it had properly exercised subrogation rights pursuant to a county ordinance and a "Human Resources Policy Manual," both of which contained the following language: "If a third party or its insurer may be liable for any losses in which benefits have been paid, the County shall be entitled to be repaid first, and shall have a lien against any recovery by the covered person by the third-party or its insured." The County observed that both sources indicate they apply to workers cov-

---

[1] There were actually two collective bargaining agreements in this case: one applicable to the Opichkas and one to Breitenstein. All of the relevant provisions, however, are the same. We therefore refer to the agreement in the singular.

ered by collective bargaining agreements to the extent that such agreements do not contain contrary terms. The County saw no conflict in this case between its subrogation rights and the deputies' time-off benefits because the plaintiffs had already received those benefits. The County also disagreed that it was obligated to specifically bargain for subrogation rights because they are management rights, which are not subject to mandatory collective bargaining. Finally, the County maintained that as to the Opichkas, there had been an accord and satisfaction when their attorney paid out the $332.50 from the settlement proceeds.

¶ 7. The circuit court held a hearing and ultimately decided in favor of the County. The court concluded that the subrogation ordinance did not affect wages, hours and working conditions because the deputies had gotten paid time off as requested. Thus, it was not in conflict with those agreements and was not subject to mandatory bargaining. The court therefore agreed with the County's position that it had subrogation rights to recoup the amounts it had paid out. The court further held that the plaintiffs were not entitled to have their sick time restored because they had already received their time off. Accordingly, the court held that the County had no obligation to return the amounts it had received from the Opichkas and ordered Breitenstein to pay the sums in escrow to the County. The deputies appeal.

## DISCUSSION

¶ 8. We review summary judgment decisions de novo, using the same well-known methodology that the circuit court employs. *See Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–23, 241 Wis. 2d 804, 623 N.W.2d 751. We will uphold the circuit court's grant of

summary judgment when the prevailing party is entitled to judgment as a matter of law and where no genuine issue of material fact exists. *Id.*, ¶ 24. We also must construe the ordinance. This too presents a legal question for our independent review. *Bruno v. Milwaukee County*, 2003 WI 28, ¶ 6, 260 Wis. 2d 633, 660 N.W.2d 656 (rules of statutory construction applicable to ordinances). Our interpretation aims to give effect to the legislative intent. *See id.*; *State v. Franklin*, 2004 WI 38, ¶ 9, 270 Wis. 2d 271, 677 N.W.2d 276. We begin with the language of the ordinance, and if the meaning is unambiguous, we apply it as written. *Bruno*, 260 Wis. 2d 633, ¶ 7.

¶ 9. Again, the subrogation ordinance provides: "If a third party or its insurer may be liable for any losses in which benefits have been paid, the County shall be entitled to be repaid first, and shall have a lien against any recovery by the covered person by the third-party or its insured." The meaning of this ordinance is clear. Where the County has paid benefits because of a loss the employee has suffered and the employee receives damages from the third party, the County may assert a lien on the recovery to recoup benefits it paid before the employee recoups his or her loss. Thus, we must ask whether the County paid benefits *because* of a loss.

¶ 10. The collective bargaining agreement conclusively answers this question. The agreement reads in pertinent part:

12.01 A Deputy will be eligible for vacation with pay in any anniversary year upon the condition that the Deputy has worked fourteen hundred (1400) straight time hours in the preceding anniversary year.

. . . .

495

12.03 Each Deputy who has met the eligibility requirements set forth above shall be entitled to vacation with pay in accordance with the following schedule [which lists how many paid hours of vacation an employee gets after various lengths of service].

. . . .

14.01 Sick leave is a benefit granted to a Deputy on account of personal sickness or accident disability. Sick leave shall be accumulated at the rate of four (4) hours per bi-weekly pay period, in which a Deputy's absences from work for that pay period do not exceed twenty (20) hours . . . .

This language demonstrates that an employee *shall* receive these benefits, which are based on the number of hours of service. In other words, an employee accumulates the benefits by working for them. They are compensation.

¶ 11. Because the paid time off was part of the deputies' earned compensation, the time and money that the County gave them did not *result from* any loss caused by their accidents. Rather, these benefits were personal property the deputies had purchased by working the requisite number of hours. They had complete autonomy over how they would use these accumulated benefits. For example, they could demand vacation pay for anything from a trip to Acapulco to a quiet day at home in front of the television. Thus, when they requested time off because of their accidents, the County paid them time and money it was already obligated to have available on demand. The County cannot claim a loss for giving the deputies their own property, so it has no right to recover the value of that property from the settlement proceeds.

¶ 12. It is no answer that the County may have paid a replacement worker time and one-half. The County would have incurred that expense regardless of why the deputies used their time off. Had they taken off because of illness or to go somewhere on vacation, the County had no hope of recovering the sick or vacation pay. The result should not change just because a tortfeasor enters the picture. At bottom, the County seeks to turn its employees' misfortunes into a profiteering opportunity. This we will not allow.

¶ 13. Wisconsin and Seventh Circuit precedent supports our holding. In *Betterman v. Fleming Cos.*, 2004 WI App 44, ¶¶ 34–38, 271 Wis. 2d 193, 677 N.W.2d 673, this court held that an employer could not offset disability benefits it had distributed to its employee against the wage loss damages it owed him. The court quoted the Seventh Circuit's opinion in *E.E.O.C. v. O'Grady*, 857 F.2d 383, 391 (7th Cir. 1988). *Betterman*, 271 Wis. 2d 193, ¶ 37. *O'Grady* refused to let an employer offset a back pay award with pension benefits it had distributed to the plaintiffs, stating, "[the claimants'] pension benefits may be viewed as *earned* by the claimants and therefore not paid by the employer at all." *See O'Grady*, 857 F.2d at 390–91. *Betterman* held that similarly, Betterman's disability benefits were part of his compensation because they were "part of an overall benefit package which was part of his salary which was intended to attract qualified people to this position." *Betterman*, 271 Wis. 2d 193, ¶ 38.

¶ 14. *Betterman* also referenced the court's earlier decision in *Salveson v. Douglas County*, 2001 WI 100, 245 Wis. 2d 497, 630 N.W.2d 182. *Betterman*, 271 Wis. 2d 197, ¶ 36. In *Salveson*, the circuit court had made a finding that the employee's union had negotiated to give up salary increases and other benefits in return for

disability pay, such that the disability benefits constituted part of her compensation. *Salveson*, 245 Wis. 2d 497, ¶ 57. The supreme court accepted that finding, stating that "Salvason earned and essentially paid for the benefits." *Id.*, ¶ 60.

¶ 15. The County attempts to distinguish *Salveson*, *Betterman*, and *O'Grady* on the basis that the employers in those cases were tortfeasors, whereas the County bears no responsibility whatsoever for the damages the deputies incurred in their accidents. This distinction is without a difference. The key question in those cases and here is who owns the earned benefits, the employer or the employee. We do not see how the County's lack of culpability affects that issue.

■

¶ 16. Because the deputies owned the time-off benefits, the County's subrogation liens also violate the collective bargaining agreement. The deputies were forced to use their property in a way they did not wish to use it. Instead of saving their sick days for illnesses, they had to use them to recuperate from accident injuries. Similarly, they did not get to use their vacation time for recreation or relaxation. The tortfeasors therefore caused these deputies to lose the value of their bargain. The settlement was supposed to replace that value, but instead, the County insisted on taking it. Essentially, the subrogation liens improperly cancelled part of the negotiated benefits.[2]

---

[2] We disagree with the County's position that the subrogation ordinance and policy manual change the result. As we have already indicated, we do not read these sources to allow subrogation where the County has not paid anything it was not already responsible for. Further, even if we were to do so, such a result would conflict with the collective bargaining agreement by nullifying the County's obligation to pay benefits. Thus, we

¶ 17. We next address the County's contention that the doctrine of accord and satisfaction precludes the Opichkas' claim. The County argues that the Opichkas tendered them the $332.50 to settle the dispute and that the County accepted that amount in satisfaction thereof. This check therefore constituted a valid accord and satisfaction in the County's view. The County asserts that because the Opichkas did not request a restoration of their time off until after the County received the check, the request was untimely.

¶ 18. The County relies on *Hoffman v. Ralston Purina Co.*, 86 Wis. 2d 445, 453, 273 N.W.2d 214 (1979), which states that "An 'accord and satisfaction' constitutes a defense to an action to enforce the claim." In *Hoffman*, the parties had been involved in settlement negotiations and the defendant sent the plaintiff a settlement offer accompanied by a check and credit memorandum. *Id.* at 452. The plaintiff retained the check without protest for seven months, at the end of which he purported to reject the offer. *Id.* at 452–53. The court held that Hoffman had, by his silence and retention of the check for an unreasonable amount of time, accepted the settlement. *See id.* at 458.

¶ 19. The facts of this case differ manifestly from those in *Hoffman*. In *Hoffman*, the check Ralston Purina Co. tendered to Hoffman was not only specifically tendered as part of an offer to settle, there were no additional strings attached. Here, the relevant portion of the February 12, 2004 letter from the Opichkas' attorney to the County read,

must view the ordinance and policy manual as default rules that the parties contracted out of. Indeed, both sources indicate that they do not apply to the extent that they conflict with a collective bargaining agreement.

Enclosed with this letter please find my trust account check no. 2361 made payable to Racine County in the amount of $332.43 which represents the subrogation lien of Racine County for payments made to the Opichkas for their wage loss as a result of the automobile accident in the case referenced above.

We must read this letter in the context of events that occurred very shortly thereafter. Between February 12 and March 12, when the Opichkas filed their notice of claim, the Opichkas made numerous attempts to have their sick and compensatory benefits restored, and the County declined to do so. We view the letter as, at best, an attempt to compromise with the County. The Opichkas conceded part of their recovery premised on the belief that the County would restore their time-off benefits. Their repeated demands for reinstatement of their benefits within a reasonable time of tendering the check contrast sharply with Hoffman's apparent acquiescence and lack of protest for seven months. Unlike in *Hoffman*, the Opichkas' conduct would not have led a reasonable person to believe that a final resolution of the controversy had been reached. There was no accord and satisfaction because the County never accepted the terms of the Opichkas' offer.

## CONCLUSION

¶ 20. Once the deputies worked a certain number of hours, their time-off benefits became a property right. When their accident injuries forced them to apply these benefits for an unintended purpose, they lost the benefit of their bargain: paid time off while ill or on vacation. The tortfeasors compensated the deputies for this loss, but then the County asserted subrogation liens to snap up the recovery for itself. The County not only had no right to do so, it also violated the deputies'

collective bargaining agreement by its action. Accordingly, we reverse the judgment of the circuit court. The County must return the settlement proceeds it received to the plaintiffs. We also hold that there was no accord and satisfaction with respect to the lien against the Opichkas.

*By the Court.*—Judgment reversed.