STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael VINSON, Defendant-Appellant.

Court of Appeals

*No. 93–1680–CR. Submitted on briefs March 2, 1994.—Decided March 24, 1994.*

(Also reported in 515 N.W.2d 314.)

For the defendant-appellant the cause was submitted on the briefs of *Donald T. Lang* of *Office of the State Public Defender* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Stephen W. Kleinmaier*, assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J. Michael Vinson appeals from judgments convicting him of two counts of sexually assaulting a young boy and from an order denying his motion for postconviction relief.

The issues are: (1) whether the trial court's statement, in ruling on the child victim's competency to testify, that the child was a "credible" witness denied Vinson due process and a fair trial; (2) whether the child's mother impermissibly testified as to the truthfulness of her son's allegations against Vinson; (3) whether the trial court erred in allowing a therapist to testify that the child's observed behavior was consistent with that of victims of sexual abuse; (4) whether these claimed errors entitle Vinson to a new trial in the interest of justice; and (5) whether the trial court improperly added a "repeater" enhancement to Vinson's sentence.

We conclude that the trial court's obvious misstatement in ruling on the victim's competency to testify does not warrant reversal. We also conclude

300

that the court did not err in admitting the challenged evidence or in sentencing Vinson. We therefore affirm the judgments and order.

Vinson was charged with two counts of having sexual contact with a five-year-old boy while he was engaged as the child's baby-sitter. The jury found him guilty and he was sentenced to a total of ten years in prison. His motion for a new trial and, in the alternative, for modification of his sentence, was denied and this appeal followed. Other facts will be discussed in the body of the opinion.

## I. The Trial Court's Remarks

Prior to hearing the child's testimony, the trial court conducted a brief colloquy with him for the purpose of assessing his competency to testify, a procedure formerly used in cases involving small children.[1] The colloquy proceeded as follows:

(THE PROSECUTOR): This is Judge Twesme.

COURT: Hi J[ ].

J[ ]: Hi.

---

[1] Vinson points out that in *State v. Hanson*, 149 Wis. 2d 474, 476, 439 N.W.2d 133, 134 (1989), the supreme court held that the trial court erred in striking the testimony of a five-year-old child at a sexual assault preliminary hearing on grounds that, because the child was unable to distinguish between truth and falsehood, she was incompetent to testify. The *Hanson* court concluded that, with some exceptions, "competency is no longer a test for the admission of a witness'[s] testimony," and that it is up to the jury to assess the witness's overall credibility. *Id.* at 482, 439 N.W.2d at 136. Because the colloquy was unnecessary in this case, however, does not make it reversible error, and Vinson does not so argue.

COURT: How old are you?

J[ ]: Six.

COURT: You are getting to be a big boy. J[ ] these people are going to ask you some questions. Will you promise me that you will tell the truth? Do you know the difference between the truth and a lie? You do? You are saying yes? Now you know if you say a lie you might be punished, do you understand that? And if you tell the truth then that's what . . . is the truth. Exactly as it is, do you know that J[ ]?

J[ ]: Yeah.

COURT: And will you promise me that everything that they ask you[,] you will tell and state it as the truth as you recall exactly what happened, is that right? Will you do that?

J[ ]: Yes.

COURT: Nobody is going to hurt you, do you understand that?

J[ ]: Yeah, I do.

COURT: Okay, you may proceed. *I think this witness is credible.*

(Emphasis added.)

Vinson argues that the court's "unnecessary pronouncement violated the rule prohibiting commentary on the credibility of a witness'[s] testimony and undermined his due process right to a neutral and detached magistrate." We agree with Vinson that it is improper for one witness to comment on the credibility of another witness's testimony, *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673, 676 (Ct. App. 1984), and that that rule should apply even more forcefully to judges who, above all, are responsible for maintaining an atmosphere of impartiality during the course of a trial.

*Breunig v. American Family Ins. Co.*, 45 Wis. 2d 536, 547, 173 N.W.2d 619, 626 (1970). Indeed, "[d]ue process requires a neutral and detached judge. If the judge evidences a lack of impartiality, whatever its origin or justification, the judge cannot sit in judgment." *State v. Washington*, 83 Wis. 2d 808, 833, 266 N.W.2d 597, 609 (1978).

Vinson failed to object to the court's remark when it was made.[2] Vinson argues that we should nonetheless reverse under the plain error rule of § 901.03(4), STATS., which allows us to take "notice of plain errors affecting substantial rights although they were not brought to the attention of the [trial] judge." In the alternative, he suggests that his trial attorney's failure to object to the court's remark denied him the effective assistance of counsel, and that reversal is warranted on that ground as well.

In order for an error to be "plain" within the meaning of the rule, it must be "so fundamental that a new trial or other relief must be granted." *Virgil v. State*, 84 Wis. 2d 166, 191, 267 N.W.2d 852, 864-65 (1978). A "plain error" is one that is "both obvious and substantial" or "grave," *id.* at 191, 267 N.W.2d at 865, and the rule is "reserved for cases where there is the likelihood that the [error] . . . has denied a defendant a basic constitutional right." *State v. Sonnenberg*, 117 Wis. 2d 159, 178, 344 N.W.2d 95, 104 (1984).

We agree with the State that the trial court's obvious misstatement does not rise to the level of either

---

[2] At the postconviction hearing, Vinson's trial attorney stated that he did not realize that the court used the word "credible," believing in his own mind that the word was "competent," because that was the only point of the court's questions to the child.

denying a fundamental constitutional right or substantially impairing Vinson's right to a fair trial. The court was not advocating the victim's credibility; it simply misspoke when it ruled, however unnecessarily, on the child's competency to testify at a point *before* he had given any testimony. The jurors were twice instructed at the conclusion of the trial that *they* were the "sole judges of the credibility of the witnesses and of the weight and credit to be given to their testimony," and juries are presumed to follow the court's instructions. *State v. Smith*, 170 Wis. 2d 701, 719, 490 N.W.2d 40, 48 (Ct. App. 1992), *cert. denied*, 113 S. Ct. 1860 (1993).

■

Under the circumstances—including the instructions given by the court and the fact that the misstatement came before the child gave any testimony—we are satisfied that the remark did not constitute plain error under the principles just discussed.

■

Nor has Vinson established that his attorney's representation was ineffective when he failed to object to the court's misstatement. In order to prevail on a claim of ineffective assistance of counsel, Vinson must establish both that his attorney's performance was deficient—that it fell below an objective standard of reasonableness—*and* that the deficient performance prejudiced the outcome of the case. *State v. Johnson*, 133 Wis. 2d 207, 216-17, 395 N.W.2d 176, 181 (1986). And because representation is not constitutionally ineffective unless both elements of the test are satisfied, we may dispose of such a claim where the defendant fails to satisfy either element. *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845, 848 (1990). We reject Vinson's argument because even if his coun-

sel's failure to object could be considered deficient performance—which we do *not* hold—he has shown no prejudice.

The burden is on Vinson to establish that his attorney's failure to object to the trial court's misstatement was prejudicial: that it "actually had an adverse effect on [his] defense." *Johnson*, 153 Wis. 2d at 129, 449 N.W.2d at 848 (quoting *Strickland v. Washington*, 466 U.S. 668, 693 (1984)). The bottom-line test is whether the alleged ineffectiveness "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. The defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome" of a case, and *Strickland* tells us that "not every error that conceivably could have influenced the outcome [of a case] undermines the reliability of the result of the proceeding." *Id.* at 693-94.

As our discussion of Vinson's "plain error" argument indicates, we believe that the trial court's misstatement, considered in light of all the facts and circumstances of the case, does not undermine our confidence in the outcome of the trial. We appreciate the fact that, as Vinson suggests, the primary witnesses in cases of this type are the victim and the defendant, and that the weight the jury decides to assign to their often conflicting testimony is significant. But, as we have said, even if the court's remark conceivably could have had some effect on the trial, we are satisfied that, con-

305

sidering the remark in the context of the proceedings as a whole, it did not affect the reliability of the jury's verdict or our confidence in the trial's outcome.

## II. The Mother's Testimony

During the prosecutor's examination of the child's mother, the following exchange occurred:

Q. When J[ ] was telling you this stuff, did you ask him whether or not he was telling the truth?

A. Yeah, that's the first thing I asked him.

Q. And what did he say?

A. Well, he always — if he's telling a story, I'll say J[ ] is that the truth or a lie and he'll always tell me if it's the truth or a lie, and he said no, mom, it's the truth.

Again, Vinson failed to object to the answer when it was given, and our earlier discussion of the "plain error" rule is equally applicable here. The rule affords no relief to Vinson.

In *State v. Romero*, 147 Wis. 2d 264, 269, 432 N.W.2d 899, 901 (1988), the defendant was charged with sexually assaulting a seven-year-old child, and one of the state's witnesses, a police officer, testified that, based on his experience, the child "was being totally truthful with us" when she described the events. A second officer testified that the child "was honest with us from the time of the first interview through my subsequent contact with her." *Id.* at 277, 432 N.W.2d at 904. The defendant argued that the officers' testimony violated the rule prohibiting one witness from testifying as to another witness's credibility—the same argument Vinson advances in this case. *Id.* at 273-74, 432 N.W.2d at 903.

■ Because, like Vinson, the defendant in *Romero* failed to object to the officers' testimony, he claimed on appeal that allowing the responses was plain error requiring reversal of his conviction. The supreme court rejected the argument, noting that, because the claimed error in the admission of the evidence was a "statutory violation which does not rise to the level of a constitutional violation," the plain error rule was inapplicable. *Romero*, 147 Wis. 2d at 275-76 n.3, 432 N.W.2d at 904.[3] We reach the same result here.

■ We also reject Vinson's cursory argument that his lawyer's failure to object to the answer constituted ineffective assistance of counsel. His lawyer testified at the postconviction hearing that he did not object to the mother's testimony because he planned to impeach her statement that the child would always acknowledge a lie by pointing out that the child had already given inconsistent testimony about what had happened on the day of the assault.[4] When counsel has made a stra-

---

[3] Although the *Romero* court concluded that the defendant was not entitled to relief under the plain error rule, it reversed his conviction pursuant to § 751.06, STATS., which permits the supreme court to reverse a judgment in its discretion where it is probable that justice has miscarried. *State v. Romero*, 147 Wis. 2d 264, 277, 432 N.W.2d 899, 904 (1988). The *Romero* court concluded that the officers' numerous statements regarding the truthfulness of the child's story "played a significant and perhaps decisive role in th[e] case." *Id.* at 278, 432 N.W.2d at 905.

As discussed below, we conclude that the child's mother's testimony was not prejudicial to the defense, and we address Vinson's request for discretionary reversal in part IV of this opinion.

[4] Although Vinson's attorney testified that his decision not to object was not "tactical," he stated that he felt that "there was

tegic choice in determining a course of action during a trial, we apply an even greater degree of deference to counsel's exercise of judgment in considering whether the challenged action constitutes ineffective representation. *Strickland*, 466 U.S. at 690-91. Under the circumstances of this case, and the rules discussed in the preceding section of this opinion, we do not consider that counsel's failure to object to the answer, deciding instead to attempt to impeach the testimony, was "outside the wide range of professionally competent assistance." *State v. Guck*, 170 Wis. 2d 661, 669, 490 N.W.2d 34, 38 (Ct. App. 1992) (quoting *Johnson*, 133 Wis. 2d at 217, 395 N.W.2d at 181), *aff'd*, 176 Wis. 2d 845, 500 N.W.2d 910 (1993).[5]

## III. The Therapist's Testimony

At trial, the child's therapist was asked whether the child's actions and responses observed during several therapy sessions were consistent with the behavior of child sexual assault victims generally. He recounted several of his observations of the child's behavior and stated that the behavior was consistent with behavior exhibited by victims of sexual abuse.

Vinson argues that the therapist, in so testifying, conveyed to the jury his "opinion that [the child's] claim

---

probably a way for me to . . . demonstrate that [the mother's testimony was not credible]." We view that as a strategic decision.

[5] We agree with the State that, even if counsel's failure to object rendered his performance deficient, that deficiency could not be prejudicial to the defense because the jury would have known that the mother thought the child was telling the truth: based upon her child's statements to her, she initiated Vinson's prosecution by reporting the incidents to the police.

of sexual abuse was reliable," which, as we have noted above, is impermissible. We reject the argument.

In *State v. Jensen*, 147 Wis. 2d 240, 246-47, 432 N.W.2d 913, 916 (1988), another child sexual assault case, a school guidance counselor was asked to state his opinion whether the child's behavior, which he had observed at school, was "consistent with [the behavior of] children who were victims of sexual abuse." He answered in the affirmative. The defendant, who was the child's stepfather, argued that the testimony was inadmissible because it was tantamount to an expert opinion that the assault actually occurred and that the child was telling the truth when she described it. *Id.* at 249, 432 N.W.2d at 917. The supreme court upheld admission of the testimony because, first, it "was elicited to explain the context in which [the child] made her allegation, not to prove [that she] had been assaulted," and, second, that it "was relevant to rebut the defense's theory that [the child] fabricated the . . . charge . . . ." *Id.* at 250, 432 N.W.2d at 917-18. Elaborating upon its conclusions, the court stated:

> The testimony was submitted for the purpose of establishing the context within which the complainant revealed the assault *and* to rebut the defense's suggestions that [her] reactive conduct after the assault was inconsistent with her claim of assault and evidence that she was lying. We do not believe the jury could have interpreted [the counselor's] testimony as constituting his opinion that [the child] was sexually assaulted or that she was telling the truth about the assault.

*Id.* at 257, 432 N.W.2d at 920 (emphasis added).

Vinson argues that *Jensen* is distinguishable because there the witness—the school counselor to

whom the child initially reported the incident—was not brought into the case after the fact to evaluate the child, but rather was a "historical" witness who was called to testify, in part at least, as to why his suspicions were aroused and why he questioned the child about her unusual behavior at school. Vinson contends that the therapist testifying in this case was a witness brought in after the fact to bolster the prosecution's case; and Vinson maintains that, as a result, the therapist's testimony could not be validly offered to explain "the context within which [the victim] revealed the assault . . . ." *Jensen,* 147 Wis. 2d at 257, 432 N.W.2d at 920.

As the State points out, however, there is a second element to the *Jensen* rationale: that expert testimony comparing the child's behavior to that of known sexual assault victims may also be offered to rebut a claim that the child's "reactive behavior" after the alleged assault supported the defense's theory that the child was lying about the event. *Jensen,* 147 Wis. 2d at 250, 432 N.W.2d at 918. The defense in *Jensen* attributed the child's misbehavior at school, and her "sexually promiscuous 'acting out' " behavior, to various other causes and suggested that the child had fabricated the sexual assault charge against her stepfather in order "to deflect attention from her own misbehavior at school and to retaliate against [his] strict discipline." *Id.* at 251-52, 432 N.W.2d at 918.

In this case, Vinson's attorney cross-examined the child about a request the child had made to stay overnight with Vinson some time after the first assault. The lawyer pointed out the apparent inconsistency between the child's report of the prior assault—which he said he had "not liked"—and his desire to spend the night with the person he had identified as having per-

petrated the assault. Vinson's brief stresses the purported inconsistency, along with evidence of the child's other "inconsistent statements and seemingly inconsistent behavior," such as the testimony of "several witnesses" who noted that, only one month after the first alleged assault, the child "neither avoided nor exhibited any sign that he was afraid of . . . Vinson."

Vinson was thus attempting to establish that the child's conduct was inconsistent with his assertions that Vinson had sexually assaulted him. And the therapist's testimony that his conduct and behavior was consistent with that of a child sexual assault victim served to rebut Vinson's theory. The case is thus quite similar to *Jensen*, where, as we have indicated, the supreme court allowed such comparative testimony. The *Jensen* court's discussion is particularly germane:

> The state sought to counter the defense's theory [as to the reasons for the child's behavior] with an alternative explanation, namely that [the child's] behavior could have been a manifestation of emotional trauma caused by sexual assault.
>
> Because a complainant's behavior frequently may not conform to commonly held expectations of how a victim reacts to sexual assault, courts admit expert opinion testimony to help juries avoid making decisions based on misconceptions of victim behavior. In this case, [the counselor's] testimony was relevant because it provided information about behavioral characteristics of child sexual abuse victims that may have been outside the jurors' common experience. [His] testimony was relevant to counter the defense's explanation of the complainant's behavior and to provide the jury with an alternative explanation.

*Jensen*, 147 Wis. 2d at 252, 432 N.W.2d at 918 (citations omitted).

As in *Jensen*, the jury in this case was free to draw its own inferences from the therapist's testimony that the child's behavior was consistent with that of child sexual assault victims:

> [It] could have accepted [the testimony] and viewed the consistency as one piece of circumstantial evidence that the assault occurred. Or the jury could have believed the defense's explanations of the complainant's behavior. Or the jury could have ignored the complainant's post-assault behavior altogether and relied on other evidence to determine the [defendant's] guilt . . . .

*Jensen*, 147 Wis. 2d at 255, 432 N.W.2d at 920.

We conclude that the trial court did not err in receiving the therapist's testimony. The testimony did not express an opinion on either the child's truthfulness or whether the assault had in fact occurred.

### IV. New Trial in the Interest of Justice

Vinson next argues that he is entitled to a new trial in the interest of justice under § 752.35, STATS., because "the jury had before it evidence not properly admitted which so clouded a crucial issue that it may be fairly said that the real controversy was not fully tried."[6] *State v. Wyss*, 124 Wis. 2d 681, 735, 370 N.W.2d 745, 771 (1985), *overruled on other grounds by State v. Poellinger*, 153 Wis. 2d 493, 504-05, 451 N.W.2d 752, 757 (1990). He claims that the trial court's "credible witness" remark and the testimony of the child's

---

[6] The statute provides for discretionary reversal in cases where "it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried . . . ." Section 752.35, STATS.

mother and the therapist combined to improperly bolster the child's credibility, which was a major issue in the case. Aside from these general assertions, Vinson's argument is limited to unexplained citations to two cases.

■

Our resolution of the issue is equally brief. We have considered each of the points he raises in earlier sections of this opinion and reject his arguments that each claimed error warrants reversal. We reach the same conclusion when we consider them together.

## V. The Sentence

As indicated, Vinson was found guilty of two counts of first-degree sexual assault. He was also found to have been convicted of crimes in the past which would bring to bear the "repeater" provisions of § 939.62(1)(c), STATS. If applicable, those provisions would increase the maximum ten-year term for the assault by up to two years.

In passing sentence on the first count, the trial court stated that it was sentencing Vinson "to the Wisconsin State Prison system for a period of eight years, and two added on to that by reason of the repeater statute . . . ."[7] The prosecutor then pointed out to the court that, because the sentence being imposed was less than the maximum, the repeater enhancement was inapplicable:

> MS. CLARK: Just one thing which I think should be clarified. My understanding of the repeater sen-

---

[7] On the second count, the court imposed a four-year period of probation upon Vinson's completion of the sentence on the first count. He does not challenge the sentence on count two.

tencing, the protocol is that it . . . doesn't come into play unless you give a maximum sentence . . . .

THE COURT: If it doesn't come into play, as I understand it, eight years plus the two are then considered as a sentence on the first count combined.

MS. CLARK: Okay.

. . . .

MS. CLARK: Do you intend to have him serve ten years on the first count then?

THE COURT: Yes . . . .

Vinson argues that *State v. Harris*, 119 Wis. 2d 612, 350 N.W.2d 633 (1984), requires amendment of the sentence from ten to eight years. We disagree.

In *Harris*, the defendant was charged with attempted robbery as a repeater. Upon her conviction, the trial court imposed a sentence totalling three years, stating: "The repeater has been taken into consideration, and there would be six months . . . which would amount to . . . three years. That is, 30 months and 6 months . . . ." *Harris*, 119 Wis. 2d at 615, 350 N.W.2d at 638.

On appeal, the supreme court held that the repeater enhancement could come into play only where the trial court intended to impose a total sentence in excess of "the maximum sentence prescribed by law." *Harris*, 119 Wis. 2d at 620, 350 N.W.2d at 637. Thus, because the underlying sentence was less than the statutory five-year maximum for the offense, it was improper to add a repeater enhancement. *Id* . The state argued, however, that because the trial court's total sentence of three years was less than the five-year maximum, the additional six months "ma[de] no difference." *Id.* at 621, 350 N.W.2d at 638. Rejecting the

314

argument, the supreme court looked to the sentencing court's remarks and concluded that:

> By its statement that, "The repeater has been taken into consideration, and there would be six months [added] on," the attempted robbery penalty, the trial judge enhanced the imposed sentence. This view is bolstered by the judge's subsequent statement in which he apparently clarified his intention by saying, "That is, 30 months and 6 months."

*Id.* at 625, 350 N.W.2d at 639-40.

In this case, the trial court similarly "clarified [its] intention" with respect to Vinson's sentence when the prosecutor pointed out the unavailability of the repeater enhancement. The court stated quite plainly, we think, that its intent was to sentence Vinson to a total of ten years in prison; those remarks satisfy us that, unlike the situation in *Harris*, the court did not impose a repeater enhancement, but intended to impose a ten-year sentence regardless of Vinson's status as a repeater.

*By the Court.*—Judgments and order affirmed.