IN RE the COMMITMENT OF Paul MATEK:

STATE of Wisconsin, Petitioner-Respondent,

v.

Paul MATEK, Respondent-Appellant.†
[Case No. 96–3524]

IN RE the COMMITMENT OF Paul MATEK:

STATE of Wisconsin, Plaintiff-Respondent,

v.

Paul MATEK, Defendant-Appellant.† [Case No.
97–2778]

Court of Appeals

*Nos. 96–3524, 97–2778. Submitted on briefs November 30,
1998.—Decided December 16, 1998.*

(Also reported in 589 N.W.2d 441.)

†Petition to review denied.

612

On behalf of the respondent-appellant, the cause was submitted on the brief of *Russell D. Bohach* of *Brennan & Collins* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Warren D. Weinstein,* assistant attorney general.

Before Snyder, P.J., Brown and Nettesheim, JJ.

BROWN, J. Paul Matek claims that the pattern jury instruction for commitment as a sexually violent person under ch. 980, STATS., which was used at his trial does not adequately state the law because it does not contain language from *State v. Post*, 197 Wis. 2d 279, 541 N.W.2d 115 (1995), which he claims "clarified" the definition of a sexually violent person. He argues that although his counsel never requested the language from *Post,* inclusion was so fundamental as to amount to plain error. Alternatively, he claims that his counsel. rendered ineffective assistance when he did not ask for the amendment to the pattern jury instruction. Also, Matek argues that the State's experts improperly relied upon his previous sexual offenses to establish his predisposition to commit future sexual offenses.

We reject Matek's arguments. The standard jury instruction accurately states the definition of a sexually violent person; therefore, no plain error exists and Matek's counsel did not render ineffective assistance. Further, the State's experts did not rely solely on Matek's prior bad acts to establish that he was a sexually violent person. The State's experts testified that in their opinion Matek has pedophilia and is unable to control his pedophilia, and because he is unable to control his pedophilia, there is a substantial probability he will commit sexually violent acts. This evidence satisfies the definition of a sexually violent person under ch. 980, STATS. We affirm.

The pertinent facts are as follows. In 1991, Matek was convicted of two counts of first-degree sexual assault for having anal intercourse with a boy under the age of thirteen. The court sentenced him to an indeterminate term not to exceed eight years.

Prior to Matek's scheduled release in 1995, the State filed a petition for commitment alleging him to be a sexually violent person pursuant to ch. 980, STATS. At the close of his jury trial, the trial court gave the jury the standard jury instruction on commitment as a sexually violent person under ch. 980. Following its deliberations, the jury determined that Matek was sexually violent, and the court then ordered that Matek be committed to the Wisconsin Resource Center.

Matek subsequently filed a postconviction motion claiming ineffective assistance of counsel. Following a *Machner*[1] hearing, the court rejected Matek's claim and denied the motion. Matek appeals.

To show plain error, Matek must demonstrate a flaw so fundamental that a new trial or other relief must be granted. *See State v. Vinson*, 183 Wis. 2d 297, 303, 515 N.W.2d 314, 317 (Ct. App. 1994). A plain error is one that is "both obvious and substantial" or "grave." *See id.* A holding of plain error is reserved for cases where there is a likelihood that the error has denied a basic constitutional right. *See id.*

For Matek to establish that he did not receive effective assistance of counsel, he must prove two elements: (1) that his attorney's performance was deficient, and (2) that "the deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is not deficient unless he or she "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To satisfy the prejudice prong, Matek must demonstrate

---

[1] *State v. Machner*, 101 Wis. 2d 79, 303 N.W.2d 633 (1981).

that his counsel's deficient performance was "so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Id.*

In assessing Matek's ineffective assistance claim, we need not address both the deficient performance and prejudice components if he cannot make a sufficient showing on one. *See id.* The issues of performance and prejudice present mixed questions of fact and law. *See State v. Sanchez,* 201 Wis. 2d 219, 236, 548 N.W.2d 69, 76 (1996). Although findings of historical fact will not be upset unless they are clearly erroneous, questions of whether counsel's performance was deficient or prejudicial are legal issues we review independently of the trial court. *See id.* at 236–37, 548 N.W.2d at 76.

Section 980.01(7), STATS., defines "[s]exually violent person" to mean:

> a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect or illness, and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

We discern three elements from our reading of this statute. The person who is a candidate for commitment: (1) must have been previously convicted or found not guilty by reason of insanity or mental disease of a sexually violent offense, (2) must presently suffer from a mental disorder, and (3) the mental disorder must be of such force that it makes it substantially probable that the person will engage in acts of sexual violence.

In 1995, the Wisconsin Criminal Jury Instructions Committee published WIS J I—CRIMINAL 2502, the pattern jury instruction for commitment as a sexually violent person under ch. 980, STATS. The relevant portion of the pattern instruction recognized the three requisite elements. This instruction was given at Matek's trial:

> The first fact that must be established is that Paul Matek has been convicted of a sexually violent offense.
> ` First Degree Sexual Assualt in violation of 948.02(1), Wisconsin Statutes, is a sexually violent offense.
> The second fact that must be established is that Paul Matek has a mental disorder.
>
> . . . .
> The third fact that must be established is that Paul Matek is dangerous to others because he has a mental disorder which creates a substantial probability that he will engage in acts of sexual violence.
> If you are satisfied beyond a reasonable doubt that Paul Matek *has been* convicted of a sexually violent offense, that he *has* a mental disorder, and that he *is* dangerous to others because the mental disorder creates a substantial probability that he will engage in acts of sexual violence, you should find that Paul Matek is a sexually violent person. [Emphasis added.]

Matek argues that *Post* contains important language which should have been included in the instruction. In *Post*, the supreme court upheld ch. 980, STATS., against constitutional attack, holding that it did not punish individuals for past crimes because the definition of a sexually violent person was based on a "current diagnosis of a present disorder suffered by an

individual that specifically causes that person to be prone to sexually violent acts in the future." *Post*, 197 Wis. 2d at 307, 541 N.W.2d at 124. Matek contends that this language should have been included in the instruction because the instruction, as presently drafted, is vague and "the jury could easily be misled into believing they can find a current diagnosis on the basis of facts and circumstances surrounding the predicate offense." Matek apparently argues that the language from *Post* would ingrain in the jury's mind the absolute procedural safeguard that a person in a ch. 980 action shall not be committed based upon his or her prior bad acts.

We cannot agree. The pattern instruction given in this case unambiguously told the jury that to meet the legal definition of a sexually violent person, it must first be established "that [Matek] suffers from a mental disorder." It also informed the jury how it must be convinced that Matek is dangerous to others "because he has a mental disorder which creates a substantial probability that he will engage in acts of sexual violence." These sentences clearly and succinctly told the jury that a sexually violent person under ch. 980, STATS., must presently have a mental disorder. And they also told the jury that the mental disorder must create a substantial probability that he "will engage" in acts of sexual violence.

The instruction is in the present tense. Nothing in the instruction remotely suggests that if a person had a mental disorder at some point in the past, but no longer has that disorder, the person can still be found to be a sexually violent person within the meaning of ch. 980, STATS. We conclude that the language in the instruction said the same thing that the language in *Post* says.

618

Additional language from *Post* would have been tantamount to restating what was told to the jury.

We note that since Matek's trial, the Wisconsin Criminal Jury Instructions Committee has published new standard jury instructions in light of the supreme court's decision in *Post*. The committee did not amend the instruction to add the language now requested by Matek. *See* WIS J I—CRIMINAL 2502 (1996). This further persuades us that the instruction given to the jury adequately stated the law. *See State v. Olson,* 175 Wis. 2d 628, 642 n.10, 498 N.W.2d 661, 667 (1993) ("[W]hile jury instructions are not precedential, they are of persuasive authority."). Therefore, because the pattern jury instruction adequately stated the law, there was no plain error and Matek's trial counsel did not render ineffective assistance.

Finally, Matek contends that we should reverse his commitment as a sexually violent person because it was based solely on his two prior bad acts. Specifically, he argues that the State's experts derived their diagnosis of a mental disorder solely from his past sexual offenses and then used his previous sexual offenses to establish a predisposition to commit future sexually violent offenses. This, he apparently contends, is nothing more than a circular argument of "once diagnosed a pedophile . . . always a pedophile" which punishes him for his past offenses. We reject this argument.

It is true that both of the State's experts opined how pedophilia is a lifelong disorder and that there is no cure. But this is not a case where the two experts simply branded Matek as having a current diagnosis of pedophilia based upon a prior act. In fact, one of the State's experts, Dr. Bradley Allen, thought it "inappropriate" to lump all pedophiles in one group. He

explained that "sex offenders are very unique in terms of their sexual deviancy and sexual assaultive pattern, and it's more important to look at the individual and assess each person from that regard." He testified that while it is true that pedophilia is a lifelong addiction, sexual offender treatment enables a person to control the deviancy. He testified further that a person who does not participate in treatment is not taking steps to control the deviancy. It was because of Matek's nonparticipation in treatment that Allen arrived at his diagnosis that Matek currently had a mental disorder which would make it substantially probable that he would engage in acts of sexual violence. So, rather than asserting that Matek would probably engage in sexual misbehavior based on past experience, this expert was speaking to Matek's present ability.

The other witness, Dr. Ronald Sindberg, said that he based his diagnosis on Matek's criminal and medical records, including interviews with the staff at the Wisconsin Resource Center. Sindberg was likewise convinced that the focus was on the "effectiveness of any treatment activities." He observed that there was no record of Matek participating in sex offender treatment. Based on these observations, Sindberg concluded that there was "nothing in the record that would lead me to think that that wasn't still current and appropriate." So, the current diagnosis was not based only on Matek's past acts, but on his refusal to enter any treatment that might allow him to control his deviancy.

■

We think it is important to underscore what the message is here. It is not really material that an expert testifies how pedophilia is not curable. What is important is how the jury is told that, through treatment,

pedophiles can learn to control their pedophilia and thus substantially reduce the risk of committing sexually violent crimes. Here, however, the experts cited a number of independent factors, including Matek's refusal to accept treatment, as demonstrating a present inability to control his pedophilia. Both experts concluded that because Matek could not control his pedophilia, there was a substantial risk that he would commit acts of sexual violence. Thus, the State's evidence that Matek is a sexually violent person was not based solely on his prior bad acts and we decline to disturb the jury's finding.

*By the Court.*—Orders affirmed.