KLISMET'S 3 SQUARES INC., Plaintiff-Respondent,

v.

NAVISTAR, INC., Defendant-Appellant.

Court of Appeals

*No. 2014AP1830. Submitted on briefs May 15, 2015.
—Decided May 5, 2016.*

2016 WI App 42

(Also reported in 881 N.W.2d 783.)

56

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Stephanie L. Finn* and *Terry L. Moore* of *Herrick & Hart, S.C.*, Eau Claire.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Timothy J. Aiken, Vincent P. Megna* and *Susan M. Grzeskowiak* of *Aiken & Scoptur, S.C.*, Milwaukee.

Before Kloppenburg, P.J., Higginbotham and Sherman, JJ.

¶ 1. SHERMAN, J. Navistar, Inc., appeals from judgments of the circuit court awarding Klismet's 3 Squares Incorporated damages under Wisconsin's "Lemon Law," WIS. STAT. § 218.0171 (2011–12),[1] and awarding Klismet's' trial counsel attorney fees and

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

costs. The circuit court awarded Klismet's damages in the amount of $199,500.42. On appeal, Navistar contends that Klismet's' Lemon Law claim was barred and that the circuit court erred in the court's calculation of Klismet's' damages. For the reasons discussed below, we affirm.

## BACKGROUND

¶ 2. In December 2011, Klismet's purchased a 2012 International 4300 truck. The purchase price of the truck was $96,189, plus fees, collateral costs, and finance charges totaling $10,849.85. The truck developed trouble, or "nonconformity" within the first year, after being driven 22,777 miles, and at least four attempts at repair were unsuccessful. The vehicle was subject to an unlimited mileage factory warranty for the first year, and an extended service contract covering certain components of the vehicle, for sixty additional months.

¶ 3. On May 14, 2012, Klismet's sent Navistar a Lemon Law notice by certified mail to the address listed in the owners' manual. The notice demanded a refund under the Lemon Law in exchange for return of the vehicle.[2] Navistar received the notice on May 16,

[2] Under Wisconsin's motor vehicle Lemon Law, WIS. STAT. § 218.0171, if the owner of a motor vehicle reports to the manufacturer that it does not conform to the terms of an express warranty within the first year, the manufacturer has a duty to make a reasonable attempt to repair. If the attempt to repair is unsuccessful, the consumer has several remedies. Sec. 218.0171(2)(b)1. One of those alternative remedies is to require the manufacturer to accept return of the vehicle and provide a full refund, including a number of listed attendant costs, but less "a reasonable allowance for use." Sec. 218.0171(2)(b)2.b.

2012. Navistar was required to pay the refund within thirty days, which would have been prior to June 15, 2012. *See* WIS. STAT. § 218.0171(2)(c). This did not occur.

¶ 4. Navistar computed what it considered a proper refund amount under WIS. STAT. § 218.0171(2)(c), and informed Klismet's of that amount. However, prior to the June 15, 2012 deadline, Klismet's notified Navistar that it disputed the amount of refund offered, including the calculation of the reasonable allowance for Klismet's' use of the vehicle, which Navistar calculated to be $21,908.97.[3]

¶ 5. Although the attorneys for both parties communicated about the disputed amount, no agreement was reached and on June 19, 2012, four days after the statutory deadline, Navistar sent two checks totaling $83,145.03 to the lienholder on the vehicle, TCF Equipment Finance, Inc., to pay off the outstanding loan balance on the vehicle, which TCF cashed, and a separate check to Klismet's in the amount of $2,067.72. The amount sent to Klismet's represented the balance of the purchase price of the vehicle, less the payment of the outstanding loan balance and less Navistar's calculation of the reasonable allowance of Klismet's' use of the vehicle.

¶ 6. Klismet's did not cash the check sent to it and Klismet's did not authorize TCF to accept payment from Navistar. Rather than accept the amount tendered to it by Navistar, Klismet's retained the vehicle

---

[3] WISCONSIN STAT. § 218.0171(2)(b)2.b. provides that with regard to a motor vehicle, "a reasonable allowance for use may not exceed the amount obtained by multiplying the full purchase price of the motor vehicle" by the following fraction: the number of miles the motor vehicle was driven before the consumer first reported the nonconformity to the motor vehicle dealer/100,000.

and filed this action on July 6, 2012, alleging that Navistar violated the Lemon Law. Navistar denied that it had violated the Lemon Law and counter-claimed, alleging in part that Klismet's had accepted Navistar's proffered refund and seeking a declaration of accord and satisfaction.

¶ 7. Both parties moved for summary judgment on Klismet's' claims. The circuit court granted partial summary judgment in favor of Klismet's only on the issue of whether Navistar failed to provide Klismet's with a refund within the statutory time period. How-ever, the court denied the remainder of Klismet's' motion for summary judgment and it denied in its entirety Navistar's motion for summary judgment.

¶ 8. Following a trial to the circuit court, the court entered judgment in Klismet's' favor. Relevant to the three issues raised on appeal, first, the court concluded that Klismet's' Lemon Law claim against Navistar was not barred under the doctrine of accord and satisfaction. Second, the court concluded that Navistar's calculation of Klismet's' reasonable use of the vehicle was not reasonable and that in calculating the reasonable allowance of Klismet's' use of the ve-hicle in this case, a denominator of 100,000 was not reasonable. The court concluded that a denominator of 300,000 was reasonable and that Klismet's' reasonable allowance was $7,288.64. The court concluded that Klismet's' damages amounted to $199,500.42, which represents the purchase price of the vehicle plus Klis-met's' fees and finance charges, less a reasonable allowance of $7,288.64, and that Navistar was entitled to a credit of $83,145.03 for its payment to TCF. Third, the court concluded that Klismet's did not prevent Navistar from providing Klismet's with a refund within the statutory time period. In a subsequent

60

judgment, the court also entered judgment in favor of Klismet's' attorneys in the amount of $200,507.98, for attorneys' fees and costs. Navistar appeals.

## DISCUSSION

¶ 9. Navistar contends on appeal that the circuit court erred in: (1) determining that Klismet's' Lemon Law claim was not barred by accord and satisfaction, (2) calculating Klismet's' reasonable allowance for use, and (3) determining that Klismet's was not barred by its own conduct from claiming that Navistar's refund payment exceeded the thirty-day statutory time period.[4]

¶ 10. We begin our analysis with our standards of review. Our review of the circuit court's determination that Navistar and Klismet's did not reach an accord and satisfaction is a mixed question of fact and law. *See Hoffman v. Ralston Purina Company*, 86 Wis. 2d 445, 452–53, 273 N.W.2d 214 (1979). We will uphold the court's findings of fact unless they are clearly erroneous, but review the application of the law to those facts de novo. *See State v. Matek*, 223 Wis. 2d 611, 616, 589 N.W.2d 441 (Ct. App. 1998).

¶ 11. Our review of Navistar's second argument, the circuit court's calculation of the reasonable allowance for use, while also a mixed question of fact and law, hinges upon a question of statutory construction,

---

[4] Navistar also contends that should this court rule in its favor, then the circuit court's supplemental judgment for costs and attorney's fees should be vacated. Because we affirm the circuit court, we do not reach this issue. Navistar has not otherwise challenged either the propriety or the amount awarded in the supplemental judgment, accordingly, we do not further address that judgment.

which is a question of law that we review de novo. *See State v. Cole*, 2000 WI App 52, ¶ 3, 233 Wis. 2d 577, 608 N.W.2d 432.

¶ 12. To the extent that we understand Navistar's argument that Klismet's was barred by its own conduct from claiming that Navistar failed to timely provide the refund, it also presents a mixed question of fact and law and, to the extent that an issue in equity was established, whether or not to recognize that bar is an exercise of discretion by the circuit court that we review in the usual manner for an exercise of discretion. *See State v. Jeske*, 197 Wis. 2d 905, 913, 541 N.W.2d 225 (Ct. App. 1995) (we will uphold the court's decisions "unless it can be said that no reasonable judge, acting on the same facts and underlying law, could reach the same conclusion").

*1. Circuit Court Properly Concluded that Accord and Satisfaction Not Established*

¶ 13. Navistar contends that the circuit court erred in concluding that Klismet's' Lemon Law claim against Navistar was not barred under the doctrine of accord and satisfaction. "An accord and satisfaction is an agreement to discharge an existing disputed claim. It is a contract that requires an offer, acceptance, and consideration." *Cook & Franke, S.C. v. Meilman*, 136 Wis. 2d 434, 438, 402 N.W.2d 361 (Ct. App. 1987). For reasons explained below, we conclude that Navistar failed to establish that there was an acceptance by Klismet's and, therefore, accord and satisfaction does not operate to defeat Klismet's' Lemon Law claim.[5]

---

[5] Both parties argue other aspects of this issue, such as whether accord and satisfaction can apply at all to a Lemon Law claim. However, since accord and satisfaction is not established, there is no reason for us to address these issues.

¶ 14. Navistar makes several arguments, all to no avail, that "Klismet's, by TCF, cashed the checks," and thereby accepted the offer of accord and satisfaction. First, Navistar argues that by cashing the checks sent to pay off the lien, TCF accepted on Klismet's' behalf. Navistar correctly quotes *Hoffman* that "[w]hen a creditor receives a check offered in full settlement of an obligation and cashes the check, . . . the action of cashing the check will be considered an acceptance of the offer." *Hoffman*, 86 Wis. 2d at 454. However, in the instant case, the creditor is Klismet's, which did not cash any of Navistar's checks. The only checks cashed were the two checks cashed by TCF. Thus, the central question before us on accord and satisfaction is whether TCF's cashing of the checks constitutes Kismet's' cashing of the checks.

¶ 15. Navistar argues first that, because the checks cashed by TCF were used to pay off Klismet's' obligation to TCF, TCF's cashing of the checks constitutes acceptance by Klismet's. To illustrate the lack of authority in support of Navistar's arguments, we note that Navistar argues for six pages in its brief that Klismet's accepted payment by TCF. They adequately document the uncontroversial proposition that the law finds that there has been acceptance if a party cashes the check. However, the real issue is whether TCF's cashing of the check constitutes Klismet's cashing the check. Navistar asserts that "both equitable principles along with well established legal principles make clear" that Klismet's was bound by TCF's actions unless they took "affirmative steps" to keep TCF from cashing the checks or to refund the money paid to TCF. However, Navistar offers not a single citation to legal authority for that proposition, or any proposition that would make TCF's actions binding upon Klismet's,

absent TCF being Klismet's' agent, which we address in the following paragraph.[6]

¶ 16. Navistar argues that TCF was Klismet's' agent. However, Navistar never reviews or discusses the elements of agency, nor does it explain on what basis TCF can be found to be Klismet's' agent. Furthermore, the circuit court found to the contrary that "[Klismet's] did not authorize TCF [] to accept payment from [Navistar]" and that "[Klismet's] and TCF [] did not have an agreement for TCF to act on [Klismet's'] behalf." Navistar has not argued that these findings are clearly erroneous, nor that TCF can be deemed Klismet's' agent on any other basis. Therefore, we do not consider the question of agency further.

¶ 17. A related problem with Navistar's argument that TCF's cashing of the checks that were sent to TCF to pay off the lien constituted acceptance by

---

[6] The statute requires that payment be made to the lienholder "as [its] interest may appear." *See* Wis. Stat. § 218.0171(2)(b)2.b. Klismet's further asserts that it was in Navistar's interest to do so, as it would mitigate damages. The circuit court found that the amount of finance charges that would have accrued was $6,451.67. In reply, Navistar calls this "irrelevant." We need not resolve this question, except to note that the statutory provision involved further undermines Navistar's argument that TCF was acting on Klismet's' behalf in cashing the check, since the check was sent to TCF as payment "as [TCF's] interest [] appear[ed]," rather than on Klismet's' behalf. If it is irrelevant that Navistar benefitted from the mitigation of its damages, it is equally irrelevant that Klismet's also benefitted from the satisfaction of the loan because Navistar had the independent statutory obligation to pay off the lienholder and Klismet's would have ultimately recovered any amounts it had to pay in the interim. If Navistar wanted to tie Klismet's directly to the cashing of these checks by TCF, it could have made them payable jointly to TCF and Klismet's.

Klismet's is that those two checks did not constitute the entirety of the amount tendered. As we noted in ¶ 5 above, Navistar sent a separate check to Klismet's for the balance of the amount Navistar unilaterally asserted was due under the Lemon Law. That check was never cashed. Thus, it cannot be argued that Klismet's accepted accord and satisfaction by cashing the checks, since not all of the checks were cashed.

¶ 18. Navistar next argues that the claim was discharged pursuant to WIS. STAT. § 403.311, which addresses "accord and satisfaction by use of [an] instrument." Navistar has not fully developed an argument that this section applies under the Lemon Law. Nonetheless, even assuming without deciding that § 403.311 applies, Navistar's reliance upon this statute to obtain accord and satisfaction fails for the same reason that common law accord and satisfaction fails, namely that one of the essential elements is missing —that the "claimant obtained payment of the instrument." Sec. 403.311(1)(c). As we explained above in ¶¶ 14–17, Navistar has not established that TCF's cashing of the checks sent to it by Navistar constituted acceptance by Klismet's.

¶ 19. Finally, Navistar infers without developed argument that because Klismet's did not return the check sent to Klismet's for the balance of what Navistar offered within a reasonable time, Klismet's accepted that check in full satisfaction. In a footnote, Navistar asserts:

> *Hoffman* also held that where a check was offered in full settlement of a disputed claim and the creditor remained silent but retained the uncashed check for an unreasonable time, that silence and acquiescence was manifestation of assent which gave rise to an

65

> accord and satisfaction. The court held that there was no distinction between cashing a check or retaining it for an unreasonable time.

While Navistar's description of this holding in *Hoffman* is accurate, Navistar offers no explanation of how or why that holding has any application in this case. If Navistar intends that that holding applies to the check sent directly to Klismet's and never cashed, it fails to directly argue to that effect, or to address what period of time that it asserts Klismet's held the check and whether that amount of time was "an unreasonable time." Accordingly, we do not consider this argument. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (we conclude that his argument is insufficiently developed to warrant a response).

¶ 20. Having rejected all of Navistar's arguments that Klismet's accepted payment from Navistar, it is clear that Navistar has not established this necessary element of accord and satisfaction and we affirm the conclusion of the circuit court that the parties did not reach an accord and satisfaction.

## 2. Circuit Court Appropriately Established Amount of Reasonable Allowance for Use of Vehicle

¶ 21. Under the particular provision of the Lemon Law at issue here, Wis. Stat. § 218.0171(2)(b)2.b., if the consumer offers to return the vehicle in exchange for a refund, the manufacturer shall pay to the consumer:

> the full purchase price plus any sales tax, finance charge, amount paid by the consumer at the point of

sale and collateral costs, *less a reasonable allowance for use.* Under this subdivision, a reasonable allowance for use *may not exceed* the amount obtained by multiplying the full purchase price of the motor vehicle by a fraction, the denominator of which is 100,000 . . . and the numerator of which is the number of miles the motor vehicle was driven before the consumer first reported the nonconformity to the motor vehicle dealer. (Emphasis added.)

¶ 22. The dispute between the parties over the correct amount of Klismet's' refund is entirely a dispute about the calculation of the "reasonable allowance for use." No other dispute about the amount of the refund is before us. In calculating the "reasonable allowance for use," the circuit court utilized a denominator of 300,000, while otherwise using the above statutory formula. Navistar argues that use of 300,000 as the denominator was error because the statute requires the use of 100,000 as the denominator. To resolve this issue, we must construe the relevant statutory language.[7]

■

¶ 23. Statutory construction begins with the text, which we give its common, ordinary and accepted meaning. *State v. Warbelton*, 2008 WI App 42, ¶ 13, 308 Wis. 2d 459, 747 N.W.2d 717. If the meaning is unambiguous, we apply this plain meaning. *Id.* We interpret the statute in context, not in isolation, but in

_____

[7] This dispute matters because the size of the denominator determines the amount of the "reasonable allowance for use" that can be deducted from the refund that the manufacturer must pay the consumer. Where the numerator—the number of miles driven before the consumer first reported the nonconformity—is constant, increasing the denominator above 100,000 results in a smaller deduction from the refund, and a larger check to the consumer.

relation to the language of surrounding or closely related statutes. *Id.* Effect is to be given to every word of a statute, if possible, so that no part of a statute is rendered superfluous. *Lake City Corp. v. City of Mequon*, 207 Wis. 2d 155, 162, 558 N.W.2d 100 (1997).

¶ 24. Applying the principles set out in the previous paragraph, we begin with the sentence in WIS. STAT. § 218.0171(2)(b)2.b. that precedes the sentence that contains the formula. In this sentence, the statute authorizes the manufacturer to deduct "a reasonable allowance for use." The word "reasonable" is significant and cannot be disregarded. The Wisconsin Supreme Court has noted that " 'reasonable allowance for use' is not a precise term." *Tammi v. Porsche Cars of N. Am., Inc.,* 2009 WI 83, ¶ 55, 320 Wis. 2d 45, 768 N.W.2d 783. We find persuasive the Seventh Circuit's elaboration that "[t]hese are the very types of cases in which the 'not inflexible' nature of the ceiling lends itself to negotiation." *James Michael Leasing Co., LLC v. PACCAR, Inc.*, 772 F.3d 815, 823 (7th Cir. 2014). The formula that follows must be interpreted in the light of this flexibility.

¶ 25. Turning to the formula itself, Navistar argues that the formula sets an inflexible amount, with 100,000 as the denominator, from which the circuit court may not deviate. However, the statutory language makes clear that the formula is a ceiling and not a fixed amount. WISCONSIN STAT. § 218.0171(2)(b)2.b. states that "a reasonable allowance for use may not exceed the amount" obtained by utilizing the formula. The words "may not exceed" cannot be ignored without reducing part of the statutory language to superfluity. Our supreme court has recognized that the formula creates a "ceiling on the amount that may be deducted

as 'a reasonable allowance for use' from a refund of the full purchase price." *Tammi*, 320 Wis. 2d 45, ¶ 35.

¶ 26. Therefore, the plain meaning of the statute is that a "reasonable allowance for use" should be an amount that is both reasonable and that does not exceed the ceiling imposed by the formula. The use of the word "reasonable" and the flexibility of the standard, indicate that this calls for an exercise of discretion on the part of the circuit court. As previously stated, we will affirm the court's decision unless it can be said that no reasonable judge, acting on the same facts and underlying law, could reach the same conclusion. *Jeske*, 197 Wis. 2d at 913.

¶ 27. As Navistar correctly points out, WIS. STAT. § 218.0171(2)(b)2.b. does not explain what the 100,000 denominator in the formula represents. The parties expend considerable effort arguing about whether or not 100,000 represents the expected mileage of an ordinary vehicle.[8] However, it is not necessary to resolve this issue because we have already determined that the legal standard to be applied is that the allowance be "reasonable" and not exceed the ceiling imposed by the formula. The question, therefore, is whether the circuit court arrived at its determination of what would be reasonable by appropriately reason-

---

[8] Irrespective of what the circuit court thought or what the court may have said elsewhere, the court's conclusion was not that 100,000 represents the miles driven by an average automobile, but only that the 100,000 denominator "does not apply to [Klismet's] 2012 International 4300." The conclusion specifically does not refer to the 100,000 as miles or otherwise characterize it.

ing from the facts before it and whether the court kept within the statutory ceiling.

¶ 28. The circuit court took testimony and found that the "2012 International 4300 has a useful life, before overhaul, of at least 300,000 miles and, if properly maintained, of at least 500,000 to 700,000 miles." Navistar does not argue that this finding is clearly erroneous. The court used 300,000 as the denominator of the formula to determine Klismet's' reasonable allowance for use.

¶ 29. Regardless of whether the circuit court decided as a matter of statutory construction that the 100,000 denominator represented the miles an average automobile would be driven in its life, it was not unreasonable for the court to decide that an allowance derived by multiplying the purchase cost by a fraction that compared the actual miles driven to 100,000 was not a "reasonable allowance for use" for a vehicle whose useful life could be expected to exceed 300,000 miles. In that situation, a reasonable judge could conclude that comparing the actual miles driven to 100,000 would yield too unreasonably large a portion of the purchase price to constitute a reasonable allowance for use. It was also not unreasonable for the circuit court to base its calculation of what such a "reasonable allowance for use" would be upon 300,000, the low end of what the testimony indicated the useful life of the truck to be. That is to say, the court's conclusion is a conclusion that a reasonable judge could reach because it was based upon the record before the court.

¶ 30. The circuit court found that the truck had been driven 22,777 miles before Klismet's first reported a nonconformity. Navistar does not argue that this finding is clearly erroneous. The mileage driven before a nonconformity is reported is the amount used

as a numerator in the statutory ceiling formula. WIS. STAT. § 218.0171(2)(b)2.b. This is also the amount that the court used as a numerator to determine what it concluded was Klismet's' "reasonable allowance for use." Neither party has argued that it was unreasonable for the court to do so.

¶ 31. Having concluded that the circuit court's determinations of the numerator and denominator were reasonable, we turn to whether the allowance exceeded the ceiling imposed by the formula in the statute. Following that formula, 22,777/100,000 is equal to .22777, and multiplying the "full purchase price of the motor vehicle" ($96,000) by that fraction, the result is $21,865.92. Thus $21,865.92 was the maximum amount of the reasonable allowance for use in this case.[9] Following the statutory formula and using the denominator reasonably determined by the circuit court, 22,777/300,000 is equal to .0759, and multiplying "the full purchase price of the motor vehicle" ($96,000) by that fraction, the result is $7,288.64. The "reasonable allowance for use" calculated by the circuit court, $7,288.64 did not exceed the statutory ceiling of $21,865.92.

¶ 32. In summary, we conclude that the circuit court applied a legal standard derived from the plain meaning of the statutory language and utilized appropriate facts in the record to arrive at a conclusion that a reasonable judge could reach. Therefore, we affirm this exercise of discretion by the circuit court.

---

[9] Navistar calculated the amount to be $21,908.97. However, our calculation shows the amount to be $21,865.92. The difference between the two calculations does not affect the outcome.

### 3. *Klismet's Not Barred From Making Claim*

■

¶ 33. The circuit court granted summary judgment to Klismet's on the issue of whether Navistar failed to provide Klismet's with its refund within thirty days of Klismet's' offer to return the vehicle to Navistar, contrary to Wis. Stat. § 218.0171(2)(c). Navistar contends that the circuit court erred because Klismet's was barred by its own conduct from asserting that Navistar failed to meet the statutory limit. Navistar's argument is not well articulated. Further, despite considerable opposing briefing by Klismet's in Klismet's' responsive brief, this issue appears to have been abandoned in Navistar's reply. Nonetheless, as best we can tell, Navistar is claiming that Klismet's should not be allowed to recover for Navistar's failure to comply with the thirty-day statutory period because Klismet's' conduct prevented Navistar from providing a timely refund.

¶ 34. The circuit court made the following findings that are relevant to this issue:

> 16. June 15, 2012 was the thirtieth day after [Navistar] received [Klismet's] Motor Vehicle Lemon Law Notice.

> 18. [Navistar] did not provide a refund to [Klismet's] on or before June 15, 2012.

> 22. Within 30 days of [Navistar's] receipt of [Klismet's] Motor Vehicle Lemon Law Notice, [Klismet's] notified [Navistar] that it disputed the refund amount calculated by [Navistar], including the calculation for the reasonable allowance for [Klismet's] use of the 2012 International 4300.

> 31. [Klismet's] did not make any statement to [Navistar] or [Navistar's attorney] regarding the deadline for [Navistar] to provide a refund to [Klismet's] and TCF Equipment Finance, Inc.

32. The parties did not reach an agreement regarding the amount of the refund to be provided to [Klismet's] in accordance with the Wisconsin Lemon Law.

Navistar has not argued that any of these findings are clearly erroneous.

¶ 35. Navistar relies on *Marquez v. Mercedes-Benz USA, LLC*, 2012 WI 57, ¶ 33, 341 Wis. 2d 119, 815 N.W.2d 314, wherein our supreme court held that "a manufacturer may avoid Lemon Law penalties for failing to provide a refund within the 30–day statutory period if it proves that the consumer *intentionally prevented* the manufacturer from providing a refund within the 30–day statutory period." (Emphasis added.) The court stated that in order to avoid penalties based upon the consumer's conduct, the manufacturer must prove the intentional conduct "to a reasonable certainty by evidence which is clear, satisfactory, and convincing." *Id.*, ¶ 36.

¶ 36. Long before *Marquez,* this court explained what a manufacturer in the position of Navistar was required to do:

> When the parties cannot agree on the correct amount of the refund, we interpret the Lemon Law to give the manufacturer two options: (1) pay the amount demanded by the purchaser within the thirty-day period; or (2) pay the amount which the manufacturer deems appropriate within the thirty-day period. If the manufacturer pays the amount demanded by the consumer, the matter is obviously concluded. If the manufacturer pays the amount it deems appropriate, the consumer may take the matter to court. There the issue will not be whether payment has been made within thirty days, but rather whether the amount of the refund was correct. If the fact finder determines that the refund amount was correct, the manufacturer wins and suffers no penalties under the Lemon Law. If

the fact finder determines that the refund amount was insufficient, the manufacturer loses and suffers the penalties imposed by the statute.

*Church v. Chrysler Corp.*, 221 Wis. 2d 460, 469, 585 N.W.2d 685 (Ct. App 1998). Nothing in *Marquez* overrules this holding.

¶ 37. Navistar points to no facts in the present case that would support a claim that Klismet's intentionally prevented Navistar from complying with the thirty-day statutory period. In particular, Navistar points to no evidence that Klismet's did anything that prevented Navistar from taking one of these two prescribed courses of action prior to the expiration of thirty days, let alone that it proved to a reasonable certainty by evidence which is clear, satisfactory and convincing that Klismet's did so intentionally. This is a determination for the finder of fact and, in the absence of a showing that it was clearly erroneous for the circuit court to not so find, we affirm the court's findings. Accordingly, we conclude that Navistar has not established that Klismet's was barred under *Marquez* and, other than bald, conclusory statements, develops no other argument that supports a bar to Klismet's' claim based on Klismet's' conduct. We therefore reject this argument.

## CONCLUSION

¶ 38. For the reasons discussed above, we affirm.

*By the Court.*—Judgments affirmed.